JAMES C. HOPE (DECEASED EMPLOYEE), NANCY C. HOPE (DEPENDENT), RESPONDENT, v. BARNES HOSPITAL (EMPLOYER), APPELLANT.—55 S. W. (2d) 319.

St. Louis Court of Appeals. Opinion filed December 20, 1932.

Appellant's Motion for Rehearing overruled, December 28, 1932.

Writ of Certiorari denied by Supreme Court, February 8, 1933.

*Lewis, Rice, Tucker, Allen & Chubb* for appellant.

*Wm. R. Schneider* and *J. J. Cooney* for respondent.

*Nagel, Kirby & Shepley, Green, Henry, Remmers & Dearmont, M. W. Feuerbacher, John C. Tobin* and *Eliot, Blayney & Bedal* as *Amici Curiae.*

BENNICK, C.—This is a case in which, as the issues are drawn on this appeal, the sole question involved is whether or not a charitable organization or institution falls within the purview of our Workmen's Compensation Act (Secs. 3299-3376, R. S. 1929; 12 Mo. St. Ann., Secs. 3299-3376, pp. 8229-8294).

The proceeding for compensation is by Nancy C. Hope, the dependent widow of James C. Hope, who died on May 17, 1930, as the result of an injury sustained by accident arising out of and in the course of his employment by Barnes Hospital, in the City of St. Louis. The latter's status as a charitable institution under the laws of this State is not questioned.

After an extended hearing before one of the referees of the commission, the referee, on February 17, 1931, entered his award, finding in favor of the claimant, and against the employer. Total compensation was allowed in the sum of $4,305, the same representing the death benefit plus an allowance for funeral expenses.

Among the statements of fact and rulings of law filed by the referee at the time of the entry of his award were the following:

"That the employer was a major employer (employing more than ten employees regularly), and up to the time of the accident had

never filed a rejection of the act, therefore it automatically becomes bound by its provisions.

"It is contended by the employer that as it is engaged in a charitable undertaking it is exempt from the provisions of the Compensation Act, this would be true if this action was based upon tort, but not being an action in tort, and the law not exempting such institutions from its provisions, it is bound by its provisions unless it filcs a rejection in accordance with the law."

An application for a review by the full commission was filed by the employer; and upon such review, after the taking of additional testimony, the full commission, on July 18, 1931, entered its final award, affirming the award theretofore entered by its referee. Owing to the failure of the employer to have insured its liability under the act or to have satisfied the commission of its ability to have carried its own liability, the commission ordered the award to be commuted and made payable to the claimant in a lump sum.

Thereafter the employer appealed to the circuit court, wherein, on December 7, 1931, the award of the commission was affirmed; and from the judgment entered, the employer's appeal to this court has followed in the regular course.

Based upon the fact that at common law, as our courts have interpreted it, a charitable institution is exempted from liability for its torts, the employer argues, as also do the *amici curiae,* that our compensation act neither alters that rule of nonliability, nor does it include charitable institutions within its scope and purview; that the purpose of the act is to cover workmen engaged in business or industry; that it was not the intention of the Legislature to bring charitable institutions within the terms of the act; and that to hold that such institutions may be liable for compensation under the act would be to run contrary to established public policy.

It is quite true that in this State charitable institutions have been held exempt at common law from liability for their torts, upon the theory that the funds of such institutions, being held in trust for charitable purposes, may not be depleted or diverted from such purposes, either directly by the act of the trustees or other managing officers, or indirectly by the payment of damages for their negligence. [Eads v. Young Women's Christian Association, 325 Mo. 577, 29 S. W. (2d) 701; Nicholas v. Evangelical Deaconess Home & Hospital, 281 Mo. 182, 219 S. W. 643; Adams v. University Hospital, 122 Mo. App. 675, 99 S. W. 453; Whittaker v. St. Luke's Hospital, 137 Mo. App. 116, 117 S. W. 1189.]

It does not follow from the above, however, that the Legislature, if it chose to do so, was in anywise powerless in the enactment of our compensation act to have created a rule of liability for charitable institutions where none existed before. In Eads v. Young Women's Christian Association, supra, our Supreme Court, in its most recent

case, has discussed the entire subject at great length, and has carefully pointed out the variations and differentiations in the doctrine as either followed or rejected in the several states. Reviewing the great diversity of judicial opinion, it said:

"In some jurisdictions charitable organizations are held exempt from liability for negligence of their officers and servants. In most jurisdictions institutions such as charitable hospital associations are exempted from liability for negligent injury to a recipient of their service, and this regardless of whether the ministrations received are paid for by the recipient or not. A number of courts hold such organizations liable for negligent injury to their employees or to strangers, while others hold that, even in such case, a charitable organization is exempt from liability. Some courts distinguish between injury caused by negligence of a servant in whose selection proper care had been exercised and injury due to incompetence of a servant not selected with due care or to negligence of the managing officers themselves, holding the association exempt from liability in the former circumstance and not in the latter."

Leading cases from the different jurisdictions dealing with different phases of the doctrine are cited and discussed, and finally, by way of conclusion, the court said:

"While it must be conceded that there are strong arguments in favor of holding a charitable organization liable for negligent injury to a servant or to a stranger, or for that matter even to a recipient of its service who pays therefor, it can hardly be said that there is a decided weight of authority either in favor of or against such holding. The courts of this State, upon careful consideration, have decided that it is better public policy to hold them exempt, and have adopted what has sometimes been called the trust fund doctrine, viz., that the funds of such institutions constitute a trust fund for the charitable purposes of the organization which may not be diverted to the payment of claims for damages for injuries due to negligence of managers, officers, and servants of the institution, thereby depleting the fund."

So it is to be seen that there is nothing sacred about the doctrine of nonliability as we have announced it at common law; that its fairness and justice have been recognized as strongly open to question; and that after all, while our own holding upon the subject has represented the conclusion of the courts upon the question of where the public interest lay, yet it has been a conclusion which they have at all times held open to challenge but from which they have never been persuaded to depart. But at any time they might have refused to continue to adhere to the rule of exemption theretofore announced in their decisions; and likewise it was equally within the province of the Legislature at any time to have declared a new rule of public

policy in connection with the enactment of any legislation which it may have seen fit to write into the body of our law. So much therefore for the point that the inclusion of charitable institutions within the scope and purview of the compensation act would be so violative of established public policy as not to be countenanced.

Conceding that charitable institutions have not been brought within the act by express mention, the question is therefore whether they have been included by necessary implication. We think the answer must be in the affirmative.

Of course the employer argues that the act is substitutional in character, which is true, but it does not follow that it consequently contemplates the exercise of only such rights and remedies as were theretofore available to the injured employee or to his dependents, either at common law, or as amplified by statute. What the Legislature has said is that the rights and remedies granted to the employee or his dependents by the act shall exclude all other rights and remedies at common law or otherwise. [Sec. 3301, R. S. 1929, 12 Mo. St. Ann., sec. 3301, p. 8232.] In other words, if the act affords a right and a remedy in a given instance, then any right and remedy theretofore existing are supplanted; but the rights and remedies theretofore existing are not the source of the rights and remedies granted by the act. The latter is not merely cumulative to or supplemental of the common law and existing statutes, but rather creates entirely new rights and remedies, regardless of whether they may have existed theretofore or not. For instance, as a basic proposition, the act affords a right and a remedy to an employee for an injury occasioned without wrong, human fault, or negligence, while at common law an injury received in that manner was neither actionable nor remedical. It also affords him a right and a remedy under circumstances where the employer, though himself at fault, would have had a complete defense at common law. It is obvious, therefore, that the act is not merely declaration of the rights and remedies existing prior to its passage, and consequently the employer is incorrect in its assertion that because the claimant, without the act, would have had no case of action, she can be accorded no right and remedy pursuant to its provisions. [De May v. Liberty Foundry Co., 327 Mo. 495, 37 S. W. (2d) 640.]

Now our act is contractual and elective, and at its very outset, in Section 3300, Revised Statutes 1929 (12 Mo. St. Ann., sec. 3300, p. 8230), it provides that every employer and every employee, except as otherwise provided therein, shall be conclusively presumed to have elected to accept its provisions and to furnish and accept compensation, unless prior to the accident he shall have filed with the commission a written notice of his rejection thereof. In other words, save as to the classes of employments specifically excepted from the purview

of the act, it gives rise to a conclusive presumption of acceptance on the part of every employer and every employee following the date when the commission came into existence. [Mayberry v. Fruin-Colnon Contracting Co., 327 Mo. 386, 37 S. W. (2d) 574; Warren v. American Car & Foundry Co., 327 Mo. 755, 38 S. W. (2d) 718.]

It would appear, therefore, from the general language of the act that the employer and the deceased were operating under its provisions at the time of the accident, unless the act had been rejected or the particular employment was one specifically excepted from the scope and purview of the act. The employer makes no claim of rejection; and therefore the result turns upon the question of whether employments by charitable institutions such as the employer have been placed among the classes of employments excepted from the act.

Suffice it to say that they have not been so excepted. Section 3303, Revised Statutes 1929 (12 Mo. St. Ann., sec. 3303, p. 8237), is the section of the act which designates the employments to which the act shall not apply, and it is enough to observe that employers of the character of the employer in this case are not among such classes. The same is true of such other exceptions as are created elsewhere in the act. In fact the employer does not claim that it has been specifically excepted, but rather bases its contention of nonliability upon the point we have already discussed, namely, that the act was not intended to impose liability for compensation upon institutions that were exempted from all liability for damages at common law.

Furthermore, it is significant that the definition of the term "employer" in Section 3304, Revised Statutes 1929 (12 Mo. St. Ann., sec. 3304, p. 8238), is so comprehensive as to include within its scope an institution such as the employer herein; and there is nothing about the act as a whole which discloses a legislative purpose to have limited its application solely to industries and businesses within the ordinary sense of the word. Indeed, the Legislature in framing the act had many opportunities to have exempted charitable institutions from its operation if it had chosen to have done so, and the fact that no such exception was created warrants the fair assumption that it was the legislative intent to have brought such institutions within the act.

The employer cites certain cases from other jurisdictions holding to the contrary of the result reached herein. In no event could those decisions have more than a persuasive influence in determining our own decision, for after all it is the evident intent of our own Legislature which must be given expression. Furthermore, those decisions lose much of their force when it is recalled that they are based upon local acts differing materially from our own with respect to the employments covered and the manner in which election to come within the act is to be made.

It follows that the judgment rendered by the circuit court should be affirmed; and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of Bennick, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Haid, P. J.,* and *Becker* and *Daues, JJ.,* concur.