HOBBS-WESTERN COMPANY *v.* MORRIS.

4-8266                                     204 S. W. 2d 889

Opinion delivered October 20, 1947.

106

*Shaver, Stewart & Jones,* for appellant.

*Buzbee, Harrison & Wright, Agnes F. Ashby* and *J. H. Lookadoo,* for appellee.

SMITH, J.   It is sought by this appeal to have reversed and set aside an award of the Workmen's Compensation Commission, to compensate the widow of J. W. Morris for the death of her husband, which award had been affirmed by the Circuit Court, and from which judgment is this appeal.

The instant case is companion to the case of Hobbs-Western Company, hereinafter referred to as the Company, against Craig, 209 Ark. 630, 192 S. W. 2d 116, in that some of the testimony is similar and much of it is identical in the two cases.   The employee was killed in each case while pursuing his employment as a laborer engaged in the manufacture of ties, both being killed in the same mill.

The former opinion recited the contract under which one Lea was engaged in the manufacture of the ties and the principal question of fact in the Craig case was whether Lea was a subcontractor or a seller of ties.   It was held that Lea was a subcontractor, and that inasmuch as he had procured no compensation insurance covering his operations the Company, the principal contractor, was liable under § 6 of the Workmen's Compensation

Act, for the injury and death of Craig, which occurred while he was working as an employee of Lea, the subcontractor.

The first paragraph of § 6 of the Workmen's Compensation Act reads. as follows: "A contractor in the performance of whose contract one or more persons are employed, either by himself or by a ·subcontractor, who subcontracts. all or any part of such contract shall be liable .for and shall pay compensation to any employee injured whose injury arises out of and in the course of such employment, unless the subcontractor primarily liable therefor has secured compensation for such employee so injured as provided in this Act."

We construed this paragraph in the Craig case, *supra,* and it was there held, to quote a headnote from that case: "The purpose of the Legislature in enacting § 6 of the Workmen's Compensation Act (Act 319 of 1939) providing that a contractor shall be liable for and pay compensation to an employee of his subcontractor where the injury arises out of and in the course of the employment unless the subcontractor has secured compensation to the employees in such case was to make the principal contractor a guarantor of the personal injury obligation of the subcontractor."

Lea testified in the instant case that he was operating the same mill, under the same contract with the Company, when Morris was killed, as he was operating under when Craig was killed, and his testimony established a number of facts recited in the opinion in the Craig case. For the reversal of this judgment on the award against the Company and its insurance carrier, it is insisted that while there are points of similarity in the two cases, they differ in two essential respects and that therefore the opinion in the Craig case is not authority for affirming the judgment here appealed from. It is first insisted that the testimony in the instant case was that Lea was the seller of the ties, and that whether he was or not he had taken out compensation insurance which rendered § 6 inapplicable to his sawmill operations.

Much testimony was heard which is recited in the opinion prepared by the Commission, but without reciting this testimony in detail we announce our conclusion to be that it was sufficient to support the findings of fact announced in the opinion, the essential portions of which may be summarized as follows. The Company bought the mill used in the manufacture of the ties and paid the entire purchase price. It was sold by that Company to Lea under a contract which permitted Lea to pay for it by manufacturing ties, a certain credit being allowed for each tie manufactured by Lea, and delivered to the Company. Lea gave the Company a note payable one day after demand, which was secured by a mortgage on the mill. In addition the Company bought certain timber which Lea used in his operations, on which Lea paid stumpage as he consumed the timber. It was shown that on certain occasions Lea used the mill with the knowledge and permission of the Company, for persons other than the Company, but in doing so he did not use any of the Company's timber, except that he did manufacture some lumber from portions of the timber called tie sidings. Lea testified that in manufacturing ties there were strips from the logs called tie sidings, which could not be made into ties, and that he sawed no lumber except from tie sidings. In other words, those sidings were a by-product and to prevent their waste Lea made some lumber from them. He testified that ordinarily these sidings were given to the mill operator, but that he paid stumpage thereon to the Company. He further testified that he sold ties only to the Company, and that he felt obligated both morally and legally to deliver all ties made by him to the Company, and that he was under the apprehension that if he sold ties to anyone else the Company would take the mill from him by a demand that his purchase money note be paid, and representatives of the Company admitted in fact that this demand of payment probably would have been made had Lea sold ties to anyone else. We conclude, therefore, that the Commission was warranted in finding as it did that Lea was a subcontractor.

There was testimony in the Craig case, as in the instant case, as to the manufacture of lumber from the tie sidings, it being contended there, as here, that Lea's operations were not confined exclusively to the manufacture of ties. We disposed of that contention in the Craig case by saying: "We regard as unimportant the contention that Steve Lea received as his own the slabs and extra pieces of wood (called 'tie sidings'), remaining after a tree had been manufactured into crossties. There is no finding that this residue amounted to any appreciable item, or that any disposition was ever made of any such residue from the Petty tract."

So here, Lea was primarily engaged in manufacturing ties and these exclusively for the Company, although testimony does show that he sawed a few switch ties for the Rock Island Railway Company, but the Company timber was not used in doing so, and this was done with the consent of the Company's representative.

Now it was shown that while manufacturing ties for the Company, Lea engaged in the business of producing pulpwood, and that he secured compensation insurance covering those operations. This fact forms the basis for the contention that Lea was operating as a seller, and not as a subcontractor inasmuch as the Company had no interest in the production of the pulpwood, and that this insurance relieved the Company from liability under § 6 of the Workmen's Compensation Act, inasmuch as Lea had insurance for the protection of his pulpwood operations.

The testimony in regard to this insurance will be presently stated. After Craig had been killed, and while the claim for compensation on account of his death was being heard by the Compensation Commission, one of the Commissioners told Lea not to continue to operate the sawmill without insurance. Lea then said to the Company's manager for this state: "Ted, I can't run my mill without compensation insurance. I do not have the money to put up $250 (for insurance premium) and I am not going to try to run it. I would rather let you have the mill back some way or other," and the manager said:

"Well, there is no use in you carrying compensation insurance and putting up $250 and carrying it, and we have a suit already pending. Until the pending suit is settled you go ahead and run and we will take care of you until the Craig case is settled." Lea testified that he understood from the conversation that the Company would take care of the insurance. The occurrence of this conversation was denied, but Lea's testimony was credited by the Commission and found to be true. Morris was killed before the opinion in the Craig case was delivered, holding adversely to the Company's contention that it was not liable for the injury to one of Lea's employees, and the same contention is now made as to the relationship between the Company and Lea when Morris was killed.

The Commission found in this case, as it did in the Craig case, that Lea was a subcontractor, operating without insurance, and that the Company, as principal contractor, was liable under § 6 of the Compensation Act.

The Commission specifically found "that Lea did deliver to Hobbs-Western Company all the ties produced by him at the time of the death of J. W. Morris, and prior thereto, and that he was bound to do so, not only from a moral standpoint, but from the very nature of his financial arrangements with Hobbs-Western Company under which he worked at their sufferance and was subject to their will as to termination or continuance of this arrangement."

The Commission found, and the testimony abundantly supports the finding, that Morris was killed June 18, 1945, while sawing the Company's timber into ties for delivery to the Company. After Morris had been killed and Lea learned that he had no insurance covering the operation of the sawmill, he procured insurance on his mill's operations with the Commercial Standard Insurance Company.

About the first of the year before Morris was killed, Lea formed a partnership with one Harvey Williams to produce pulpwood, and he secured an insurance policy covering those operations from the Associated Indemnity

Corporation, dated January 1, 1945. Lea and Williams entered into a contract with the International Paper Company, Southern Kraft Division, to produce pulpwood.

The testimony is practically undisputed, and the Commission found the fact to be that there was no connection whatever between the pulpwood operations and the manufacture of ties. The operations were carried on in different places. The two businesses were separately managed. Distinct records were kept at different places, by different bookkeepers, and separate equipment and nonrelated employees are used in each business. It is true that in April, 1945, Lea bought the interest of Williams, his partner, and an indorsement was added to this policy showing that the insured was S. C. Lea, individually. But there was no change in the coverage of the insurance policy, which recites that it covers such premises or other work places necessary and essential to performance of employer's contract with International Paper Company, Southern Kraft Division, Camden, Arkansas. The classification of operations is set out as ''Logging and Lumbering, No. 2702, including transportation of logs to mill: construction, operation, maintenance or extension of logging roads or logging railroads; drivers, chauffeurs and their helpers.''

Item five of the classifications contained in the policy is: ''This employer is conducting no other business operations at this or any other location not herein disclosed —except as here stated.'' ''No exceptions.'' This statement was true for the reason that the employer insured was not Lea individually, but a partnership of which Lea was then a member.

Lea testified, over the Company's objection, that it was not intended that this policy should cover anything except the pulpwood operations, and that the premium for the policy was computed ''at so much per cord or unit of pulpwood delivered to anyone by the employer.''

There is no testimony to the contrary and that such was the intention of the parties is shown by the fact that

Lea took out a separate policy with the Commercial Standard Insurance Company covering his sawmill operations after Morris' death. There were two separate businesses, conducted at different places, without any relation whatever to each other, and the Commission so found.

The contention was made before the Commission and here renewed that liability for compensation should be assessed against the Associated Indemnity Corporation, and that the policy issued by the company on the pulpwood operations exonerated appellant Company and its insurance carrier from liability under § 6 of the Compensation Act hereinabove quoted, is fully and correctly answered by the declarations of law made by the Commission. In this opinion the Commission quoted from § 38(c) of the Compensation Act, reading as follows: ''No policy of insurance against liability under this Act shall be made unless such policy shall cover the entire liability of the employer under this Act; provided that as to any question of liability as between the employer and the insurer the terms of the insurance contract shall govern; provided, further, that when an employer is engaged in more than one business for the purpose of insurance against his liability under this Act, each separate and distinct business may be covered by separate policies.''

The opinion construed this paragraph as follows: ''It is permissible for the parties to a compensation insurance contract to limit the liability of the insurer to particular work at particular places. Full coverage of the entire liability of an employer at a given place, or places, on specified work, fully meets the intents of the statute in this respect.''

The Commission applied this construction of the statute as follows:

''In the case before us the Associated Indemnity Corporation issued a policy of insurance to Steve Lea for specified work, that is, his pulpwood operation under his contract with the International Paper Company, and the policy so recites. Lea testified that he understood this

policy only covered his pulpwood operation and not his sawmill, which he thought was being taken care of by Hobbs-Western Company. The deceased was an employee of the sawmill, he performed no work in the pulpwood operation: according to the testimony there was no intermingling of employment, there being separate locations, separate management, separate crews and separate bookkeeping arrangements and pay rolls.

"Under consideration the Commission is of the opinion that the policy issued by the Associated Indemnity Corporation to Steve Lea on his pulpwood operations did not cover his sawmill operation and that under § 38(c) of the Act, the insured, Steve Lea, and the insurer, Associated Indemnity Corporation, had a right to limit the coverage of said policy to specified work; that the policy so issued covered all the liability of the employer within the meaning of § 38(c)."

This application conforms to the law as declared in the Chapter on Workmen's Compensation Acts, 71 C. J. 910, where it is said: "In some jurisdictions the Workmen's Compensation Act therein does not permit an employer to insure his employees in one part of his business and remain a nonsubscriber as to the rest of the business which, in substance and effect, is conducted as one business. But an employer who conducts two wholly separate and distinct kinds of business can become a subscriber as to one business without insuring his employees in the different and distinct business. A statute which provides that the entire liability of the employer shall be assumed in compensation policies in the state does not require coverage for the entire liability of an employer, anywhere and at any time, but such liability of the employer as the insurance company undertakes to assume must be assumed in its entirety. It is permissible for the parties to a compensation insurance contract to limit the liability of insurer to particular work at particular places. Full coverage of the entire liability of an employer at a given place or places, on specified work, fully meets the intent of the statute in this respect." Cases cited in the notes to the text fully sustain the text.

Many cases are cited in the *per curiam* opinion by the Supreme Court of Texas in the case of *Barron* v. *Standard Acc. Ins. Co.*, 122 Tex. 179, 53 S. W. 2d 769, which sustains the declarations that the rule is well established that employers of labor operating under the Workmen's Compensation Act cannot cover part of their employees and leave part of them uncovered, where such employees are engaged in the same general business or enterprise, and a policy issued thereon will cover all employees in such business, but that it is equally well settled that where an employer conducts two separate and distinct kinds of business, each business involving different risks, pay rolls, and requiring a different premium for compensation insurance, he may elect to insure a class of employees in one business and not to insure a class of employees in the other business.

It is conceded that if Morris, an employee of Lea at the sawmill plant, was not insured under the policy issued by the Associated Indemnity Corporation, there was no insurance covering him, and we concur in the holding of the Commission that this policy did not cover the employees at the sawmill. The Commission was justified in finding that Lea was operating the sawmill as a subcontractor in violation of § 6 of the Compensation Act.

The judgment must, therefore, be affirmed in accordance with the opinion in the Craig case, and it is so ordered.