LANZA v. CARROLL et al.

LANZA v. JENNINGS et al.

LANZA

v.

SAINT PAUL–MERCURY INDEMNITY CO. et al.

Nos. 15016, 15017, 15018.

United States Court of Appeals, Eighth Circuit.

July 30, 1954.

Rehearing Denied in 15016 Aug. 24, 1954. Rehearing Denied in 15017, 15018 Dec. 15, 1954.

Writ of Certiorari Granted in 15016, Nov. 8, 1954. See 75 S.Ct. 113.

**810**

Alston Jennings, Little Rock, Ark. (Bruce H. Shaw, Fort Smith, Ark., on the brief), for appellant.

Shields M. Goodwin, Little Rock, Ark., and Harold J. Fisher, Springfield, Mo. (Allen, Woolsey & Fisher, Springfield, Mo., Arthur N. Wood, Yellville, Ark., and Goodwin & Riffel, Little Rock, Ark., on the brief), for appellees.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

These three cases were consolidated for trial in the district court, tried to the court without a jury, judgments were entered in each case for plaintiffs and defendant appeals. The actions are all for damages for personal injuries to employees of a subcontractor, and Nos. 15,017 and 15,018 present one common question, namely, may a prime contractor be held liable for damages as a "third-party" within the meaning of the Arkansas statute, § 81–1340, Ark.Stats., 1947, 1951 Supp., in an action brought by an employee of the subcontractor to recover damages for personal injuries sustained while at work on the project covered by the subcontract? No. 15,016 presents the question whether the rights of the parties are determined by the laws of Arkansas or the laws of Missouri for damages for an injury sustained in the same accident as were the injuries complained of in Nos. 15,017 and 15,018.

The accident in which the injuries complained of arose occurred in Arkansas on January 26, 1953. The actions in the Carroll case, No. 15,016, and the Jennings case, No. 15,017, were brought in the state court of Arkansas and removed to the district court on the ground of diversity. The Saint Paul-Mercury Indemnity Company case, No. 15,018, was brought in the federal district court in the first instance, jurisdiction being predicated on diversity of citizenship.

The defendant Lanza is a citizen of Louisiana. The plaintiffs Hogan and Carroll are both citizens and residents of Missouri. Jennings and Sisney are citizens of Arkansas. The Indemnity Company is a Delaware corporation and carries the workmen's compensation insurance on Hogan for the benefit of his employees in both Missouri and Arkansas.

Carroll was a foreman and a regular employee of Hogan and had been for several years before the circumstances involved in this case occurred.

The defendant Lanza had a contract with the United States Government in connection with the construction of the Bull Shoals dam in Baxter County, Arkansas. On January 22, 1952, Hogan entered into a contract with Lanza, by the terms of which he agreed to furnish all labor and material and to do all the painting required by the Lanza contract. But there was a special contract for doing the job involved in these cases. On November 7, 1952, Hogan submitted a bid to Lanza by letter to paint 18 "trash racks", saying "After racks have been set in upright position and arranged so as to be accessible for painting, all areas * * * are to be given three coats of Coal Tar Paint as specified by Army Engineers * * *." The offer was accepted on November 14, 1952.

A "trash rack" consists of a metal frame approximately 13 feet long, 10 feet high and 12 inches wide. Inside the frame are four cross bars parallel to the ground and about 2 feet apart. Inside the frame there are, also, 25 steel fins, each of which is about 10 feet long, 5 inches wide, and seven-eighths of an inch thick. When the rack is in an upright position the fins are perpendicular to the ground and approximately the height of the rack. The fins in each rack weighed about 4,000 pounds and the remainder of the rack about 1,400 pounds, so that each rack weighed approximately 5,400 pounds.

In November, 1952, Lanza's employees delivered the racks to the place where they were to be painted south of the Bull Shoals Dam on the east side of the river. At first they were stacked on the ground in piles of three racks each, and while

they were in that position Carroll, Jennings and Sisney, employees of Hogan, the sub-contractor, painted the outer surface of the racks and some of the fins. Thereafter defendant Lanza's employees set the racks in an upright position to be painted by Hogan's employees.

When the racks were first set up to be painted they were placed on parallel metal railroad rails resting on wooden planks on the ground. The racks were placed about three feet apart and held in place by spreader braces. Ten racks were set up in a row and 8 racks in a parallel row with an aisle about 4 feet wide between them. The racks in each row were attached to each other by braces and the end racks were supported by two guy wires attached to metal pins in the ground. All of this work was done by Lanza's employees and after it was completed Hogan's employees proceeded with the painting.

The railroad rails upon which the racks had been placed belonged to the United States government, and upon its request Lanza's employees undertook on January 26, 1953, to remove the rails and to substitute for them railroad ties. The braces were removed and by the use of pry poles they undertook to lift the racks up slightly to remove the rails and to place in their stead the railroad ties. The spreader braces were first removed and then the work of substitution proceeded. While this work was going on Hogan's employees continued painting on the 8-rack row.

The ground on which the racks were placed was filled with dirt and was soft and wet at the time.

About 11:30 a. m. one of the guy wires on the 8-rack row broke and all the racks fell; and Carroll, Jennings and Sisney were severely injured. The court found that they did not know that Lanza's employees had begun work on the 8-rack row at the time.

The states of Missouri and Arkansas both have Workmen's Compensation laws. The Saint Paul-Mercury Indemnity Company is the workmen's compensation insurer for the Harry B. Hogan Painting Company in connection with the injury suffered by Virgil G. Carroll when the trash racks fell. The court entered orders permitting Hogan and the Indemnity Company to intervene as plaintiffs in the cases brought by Carroll and Jennings. All the appellees, Carroll, Jennings and Sisney, have been paid workmen's compensation benefits by the Indemnity Company. Jennings and Sisney were paid benefits under the laws of Arkansas. Carroll was paid benefits for 34 weeks until October 10, 1953, under the Missouri law. On that date he requested that his benefits be paid under the law of Arkansas, and they have been paid to him since then under that law.

In his answers to the three actions Lanza denied that the employees of Hogan were injured by reason of his negligence or that of his employees, and alleged that Hogan's employees were guilty of contributory negligence or that they assumed the risk of the injuries suffered by them. Prior to the trial Lanza filed motions for summary judgment in each case on the ground that the remedies provided by the workmen's compensation acts were exclusive. The motions were overruled by the trial court. At the conclusion of plaintiffs' evidence the motions were renewed and were again overruled. After the conclusion of the trial judgment was entered in favor of the Indemnity Company, Hogan and Sisney for $22,500; in favor of Carroll for $18,000; and in favor of Jennings in the sum of $6,000, from which judgments Lanza has appealed.

Appellant Lanza contends here:

1. That the remedies provided by the Arkansas Workmen's Compensation Act are exclusive, and that appellant is entitled to judgment as a matter of law in all three cases;

2. That the remedies provided by the Missouri law are exclusive, and that appellant is entitled to judgment in the Carroll case as a matter of law; and

3. That it cannot be consistently held that appellant was negligent and that

Carroll, Jennings and Sisney were free of contributory negligence.

It is conceded by all parties that the Workmen's Compensation Law of Missouri is exclusive and that Carroll who was employed in Missouri and who accepted 34 payments under that law could not maintain his action unless his election on October 10, 1953, to receive his compensation benefits under the Arkansas law is sufficient to sustain the judgment in his favor.

The Arkansas statute, § 81–1304, Ark. Stat.1947, 1951 Supp., provides also that "The rights and remedies herein granted to an employee subject to the provisions of this Act, on account of injury or death, shall be exclusive of all other rights and remedies of such employee * * *."

It is contended by appellees, and it was held by the court, that Lanza was liable to them as a "third party" under § 81–1340, Ark.Stats.1947, 1951 Supp., which provides:

> "*Third party liability.*—(a) *Liability unaffected.* (1) The making of a claim for compensation against any employer or carrier for the injury or death of an employee shall not affect the right of the employee, or his dependents, to make claim or maintain an action in court against any third party for such injury, but the employer or his carrier shall be entitled to reasonable notice and opportunity to join in such action. If they, or either of them, join in such action they shall be entitled to a first lien upon two thirds of the net proceeds recovered in such action that remain after the payment of the reasonable cost of collection, for the payment to them of the amount paid and to be paid by them as compensation to the injured employee or his dependents.
>
>       *       *       *       *
>
> "(b) *Subrogation.* An employer or carrier liable for compensation under this Act for the injury or death of an employee shall have the right to maintain an action in tort against any third party responsible for such injury or death. After reasonable notice and opportunity to be represented in such action has been given to the compensation beneficiary, the liability of the third party to the compensation beneficiary shall be determined in such action as well as the third party's liability to the employer and carrier. * * *."

The primary obligation of the employer to provide compensation for his employees is found in § 81–1305, Ark. Stats.1947, 1951 Supp., as follows:

> "*Liability for compensation.*— Every employer shall secure compensation to his employees and pay or provide compensation for their disability or death from injury arising out of and in the course of employment, without regard to fault as a cause for such injury; * * *. The primary obligation to pay compensation is upon the employer and the procurement of a policy of insurance by an employer to cover the obligation in respect to this Act shall not relieve him of such obligation."

It is the contention of the appellant that he, Lanza, being in this case the prime contractor, is not a "third-party" within the meaning of § 81–1340 supra, and in support of this contention he cites § 81–1306, Ark.Stats.1947, 1951 Supp., which provides:

> "*Subcontractors.*—Where a subcontractor fails to secure compensation required by this Act, the prime contractor shall be liable for compensation to the employees of the subcontractor. Any contractor or his insurance carrier who shall become liable for the payment of compensation on account of injury to or death of an employee of his subcontractor may recover from the subcontractor the amount of such compensation paid or for which liability is incurred. The claim for such recovery shall constitute a lien against any monies due or to be-

come due to the subcontractor from such prime contractor. A claim for recovery, however, shall not affect the right of the injured employee or the dependents of the deceased employee to recover compensation due from the prime contractor or his insurance carrier."

Clearly Lanza is not liable in this proceeding if § 81–1304 of the Arkansas statute, supra, is applicable. But the court found that that statute is not applicable to the situation because Lanza is liable as a "third-party" under § 81–1340, supra.

■ Before discussing the applicable law involved in appellant's points 1 and 2, supra, we observe that we have reviewed the record and have concluded that the court's findings that the negligence of Lanza's employees was the cause of the accident resulting in the injuries complained of and that the injured men, Carroll, Jennings and Sisney, were not guilty of contributory negligence as a matter of law are supported by substantial evidence, and, therefore, we cannot hold that such findings are "clearly erroneous" within the meaning of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. It was Lanza's employees who were engaged in removing the railroad rails and placing the railroad ties under the racks when the accident occurred. They had been working on the 10-rack row and the injured painters were at work on the 8-rack row when, without warning the painters, Lanza's employees started work on the 8-rack row. Their negligence in placing too great a strain on the guy wire caused the accident.

■ To support his contention that the remedies provided by the Arkansas Workmen's Compensation Act are exclusive, and that he is entitled to judgment as a matter of law, appellant relies upon § 81–1306 of the Arkansas statutes, supra, which provides that when a subcontractor fails to secure compensation required by the act the prime contractor shall be liable to such employees; and

that in such a case the prime contractor may recover from his subcontractor the amount of such compensation so paid or for which liability is incurred. In this instance Hogan was the actual employer of the injured employees, and Lanza was not the statutory employer because it is without dispute in the record that Hogan had compensation insurance covering the appellees at the time they were injured.

The questions presented here were directly involved in the case of Anderson v. Sanderson & Porter, 8 Cir., 146 F.2d 58; and we there considered the amendment to the Constitution of Arkansas authorizing the legislature to enact Workmen's Compensation laws and the laws enacted pursuant thereto and, in the absence of any decision of the Supreme Court of Arkansas, this court held that in such a case as this an injured employee of a subcontractor could recover against a prime contractor for personal injuries resulting from the negligence of the prime contractor. And attention was directed to the provision of the Amendment to the Constitution wherein it is provided:

"The General Assembly shall have power to enact laws prescribing the amount of compensation to be paid by employers for injuries to or death of employees, and to whom said payment shall be made. It shall have power to provide the means, methods, and forum for adjudicating claims arising under said laws, and for securing payment of same. Provided, that otherwise no law shall be enacted limiting the amount to be recovered for injuries resulting in death or for injuries to persons or property; and in case of death from such injuries the right of action shall survive, and the General Assembly shall prescribe for whose benefit such action shall be prosecuted." Const. Amend. 26.

The opinion of this court in the Anderson case, supra, was rendered January 4, 1945, and no decision of the Supreme Court of Arkansas has since held to the contrary.

Appellant, while admitting the applicability of the Anderson decision, argues that it has been overruled by this court in the case of Huffstettler v. Lion Oil Co., 8 Cir., 208 F.2d 549; and "if it has not, it ought to be overruled in the light of the Arkansas decisions subsequent to it", referring to Hobbs-Western Company v. Craig, 209 Ark. 630, 192 S.W.2d 116; Hobbs-Western Company v. Morris, 212 Ark. 105, 204 S.W.2d 889; and Brothers v. Dierks Lumber & Coal Co., 217 Ark. 632, 232 S.W.2d 646.

■ In making this argument it is evident that appellant has overlooked certain rules applicable to appellate reviews. The rules referred to were stated briefly by this court in Clarke Hybrid Corn Company, Inc., v. Stratton Grain Co., 8 Cir., 214 F.2d 7, as follows:

"One of them [the rules] is that the prevailing party is entitled to have the evidence viewed in the aspect most favorable to it, and to have the benefit of all reasonable inferences deducible therefrom. Cleo Syrup Corporation v. Coca-Cola Co., 8 Cir., 139 F.2d 416, 418 [150 A.L.R. 1056].

"A second rule is that this Court will not retry issues of fact or substitute its judgment for that of the trial court respecting such issues. Cleo Syrup Corporation v. Coca-Cola Co., supra, 139 F.2d 416, 417–418; Pendergrass v. New York Life Insurance Co., 8 Cir., 181 F.2d 136; Noland v. Buffalo Insurance Co., 8 Cir., 181 F.2d 735, 738.

"A third rule is that the burden of demonstrating error is upon the appellant, and that in cases controlled by local law this Court will accept the considered views of the trial judge as to the applicable law unless convinced that his views are erroneous. Western Casualty & Surety Co. v. Coleman, 8 Cir., 186 F.2d 40, 43; Kimble v. Willey, 8 Cir., 204 F.2d 238, 243."

See, also, Russell v. Turner, 8 Cir., 148 F.2d 562, 564; Buder v. Becker, 8 Cir., 185 F.2d 311; Hartford Accident & Indemnity Co. v. Federal Deposit Ins. Corp., 8 Cir., 204 F.2d 933, 936.

It will be observed also that Honorable John E. Miller, judge in the Western District of Arkansas, before whom this case was tried, is the same judge before whom the Huffstettler case was tried; and his opinions in both cases disclose that he carefully reviewed the Arkansas statutes and decisions. See his findings and opinion in the Huffstettler case, Huffstettler v. Lion Oil Co., in D.C., 110 F.Supp. 222, and in this case in 116 F.Supp. 491.

■ The statutes of Arkansas and the cases cited above sustain the contention of the appellees also that the remedies provided by the Arkansas Workmen's Compensation Act are exclusive only where the employer-employee relationship exists.

Appellant's second contention is that the remedies provided by the Missouri Workmen's Compensation Act are exclusive, and that appellant is entitled to a judgment as a matter of law in No. 15,-016, the Carroll case.

■ Both Hogan and Carroll are citizens of Missouri, and the contract of employment between them was entered into in Missouri. Section 3300 of the Revised Statutes of Missouri 1929, V.A.M.S. § 287.060, provides:

"Every employer and every employee, except as in this chapter otherwise provided, shall be conclusively presumed to have elected to accept the provisions of this chapter and respectively to furnish and accept compensation as herein provided, unless prior to the accident he shall have filed with the commission a written notice that he elects to reject this chapter."

And the Supreme Court of Missouri, construing this statute has held that an employee of a subcontractor cannot sue the general contractor as a third-party and at the same time collect compensation from his immediate employer when the injury is within the Missouri Workmen's Compensation Act. See Bunner v. Patti, 343 Mo. 274, 121 S.W.2d 153; New Amsterdam Casualty Co. v. Boaz-

Kiel Construction Co., 8 Cir., 115 F.2d 950.

The evidentiary facts with perhaps one exception are not in dispute. The accident in which Carroll was injured occurred in Arkansas January 26, 1953. On March 2, 1953, he filed his complaint in this case. He was paid workmen's compensation under the Missouri law at the rate of $30 each week for 34 weeks until October 10, 1953. Prior to that date counsel for appellant proposed a stipulation be executed showing that payments had been made under Missouri law. The stipulation was not executed by Carroll and his attorney. In October, 1953, Carroll was advised by his attorney, Mr. Fisher, that he had a right to elect to take compensation under the Arkansas law at the rate of $25 a week instead of $30 a week under the Missouri law. Upon Mr. Fisher's suggestion he elected to do so. Thereafter he received compensation payments under the Arkansas law.

Hogan and the Indemnity Company were permitted to intervene and to join with Carroll as plaintiffs and to be awarded a lien upon two-thirds of the net proceeds recovered in the action. And the judgment from which this appeal was taken awarded to Carroll the sum of $18,000 with costs and established a lien thereon in favor of Hogan and the Indemnity Company on two-thirds of the net proceeds of said judgment for the payment to them of the amounts paid and to be paid as compensation to Carroll.

In the Carroll case, No. 15,016, the question for determination is whether the court erred in holding that Carroll had a right to maintain this common law action under the Arkansas act or whether the action is barred by Missouri law. As observed supra, under the Missouri law the action is barred. Carroll did not file a notice with the Commission in Missouri electing to reject the Missouri law. Section 3300, Mo.Stat.Ann., 1929; Hope v. Barnes Hospital, 227 Mo. App. 1055, 55 S.W.2d 319. And the Missouri act applies to injuries received outside the state under a contract of employment made in the state. Section 3310, Mo.Stat.Ann., V.A.M.S. § 287.110; Hungate v. Hudson, Mo.Sup., 169 S.W. 2d 682.

Of course, as the court held, the state in which the accident occurred may ordinarily apply its own Workmen's Compensation laws to accidents occurring within the state. Pacific Employers Insurance Co. v. Industrial Accident Commission, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940; Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469, 476, 67 S.Ct. 801, 91 L.Ed. 1028. And Arkansas applies the law of the place where the accident occurs in determining whether a person has a common law right of action.

Citing the foregoing authorities and others, the court said: "The Court feels that the public policy of Arkansas favoring common-law actions for damages to persons and property, and favoring the application of the law of the place of the injury, precludes the application of the bar of the Missouri Act in this case." [116 F.Supp. 503]

But the fact remains that Carroll, as a matter of Missouri law, "elected" to come within the coverage of the Missouri law and to recover his compensation under that law. The question, therefore, is whether, having accepted the payments of $30 a week under the Missouri law, he could "change his mind" and elect to come under the Arkansas law, accept $25 a week thereafter, and maintain this third-party action under the Arkansas law. The court concluded that he could do so because "At the time he was receiving payments under the Missouri Act he did not know that he had the right to recover payments under the Arkansas Act, nor did he know that the payments were, in fact, being made under the Missouri Act."

In making this last finding, the court apparently overlooked Carroll's testimony in his deposition taken at the request of appellant on August 27, 1953, in which he testified that he was receiving work-

men's compensation under the Missouri Workmen's Compensation Act.

It was recognized by the court and by the parties that the full faith and credit clause of the Constitution must be considered in this case. In the opinion of the court it is said: "If the decision of the Supreme Court in the case of Bradford Electric Light Co., Inc., v. Clapper, Adm'x, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026, were the last pronouncement of the Court on the question, there is little doubt but that the Full Faith and Credit Clause would require the application of the Missouri bar, because the facts in that case were substantially the same as the facts in this case. However, over a period of years the holding and rationale of the Clapper case have been so modified by later decisions of the Supreme Court that the extent and force of the opinion is, to say the least, doubtful."

In support of this conclusion the court cites Pacific Employers Insurance Co. v. Industrial Accident Commission, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940; Alaska Packers Ass'n v. Industrial Accident Commission of California, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044; Cardillo v. Liberty Mutual Insurance Co., 330 U.S. 469, 476, 67 S.Ct. 801, 91 L.Ed. 1028; and Industrial Commission of Wisconsin v. McCartin, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140.

The court, however, does not cite Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149, in which case the facts more nearly coincide with the facts of the present case than do the facts in the cited cases. In the Magnolia case Hunt, a resident of Louisiana, was employed in that state by Magnolia as a laborer in connection with the drilling of oil wells. In the course of his employment he went to Texas where, while working on an oil well, he was injured. He procured workmen's compensation for his injuries under the Texas Workmen's Compensation Law. Under the Texas law the award of compensation was final and exclusive, resembling the Missouri law in that respect. After-

ward Hunt instituted a proceeding in Louisiana to recover compensation under the laws of that state. He was awarded the relief demanded by the state court of Louisiana, and the Supreme Court reversed. It is difficult to distinguish that case from the present one. We are disposed, therefore, to apply what appears to us to be its authority here. See, also, Ohlhaver v. Narron, 4 Cir., 195 F.2d 676, and New Amsterdam Casualty Co. v. Boaz-Kiel Construction Co., 8 Cir., 115 F.2d 950.

The result is that the judgment in No. 15,016 is reversed, and the judgment in Nos. 15,017 and 15,018 are affirmed.