Phil KENNEDY, Appellant,

v.

U. S. CONSTRUCTION COMPANY and W. E. Sanders Construction Company, Appellees.

No. 76–1329.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 8, 1976.

Decided Dec. 2, 1976.

Hobbs & Longinotti, Hot Springs, Ark., for appellant.

Overton S. Anderson, Smith Williams, Friday, Eldredge & Clark, Little Rock, Ark., for appellees.

Before GIBSON, Chief Judge, and HEANEY and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Phil Kennedy, plaintiff-appellant, appeals from a judgment of the United States District Court for the Western District of Arkansas (The Honorable Oren Harris, District Judge) dismissing plaintiff's personal injury suit against U. S. Construction Company and W. E. Sanders Construction Company. The judgment was entered after the district court had instructed a jury verdict in favor of the defendants at the conclusion of plaintiff's evidence.

In passing upon the defendants' motion for a directed verdict the district court was required to view the evidence in the light most favorable to the plaintiff, to give the plaintiff the benefit of all inferences in his favor reasonably to be drawn from the evidence, and to deny the motion unless the evidence was so one-sided as to leave no room for any reasonable difference of opinion as to how the case should be decided factually.

The background facts of the case are simple and relatively undisputed. In May, 1972 the defendant, U. S. Construction Company, was the prime contractor engaged in the building of an apartment complex in or near the City of Little Rock, Arkansas. The defendant, W. E. Sanders Construction Company, was the principal subcontractor on the job, and Archie Cullipher had a subcontract under Sanders for framing work which involved the sawing of lumber. Plaintiff was an employee of Cullipher and was covered by workmen's compensation insurance provided by Cullipher's workmen's compensation insurance carrier.

The accident occurred on May 19, 1972. For several months prior to the accident plaintiff had been using in his work for Cullipher a radial saw that had been loaned gratuitously to Cullipher by Sanders. The saw was mounted on a table and was located at a work site somewhat removed from the place at which the main body of the construction work was being carried on. The work site was under the exclusive control of Cullipher, and it was the responsibility of either Cullipher or plaintiff to clean up the site and to remove debris which might accumulate under or around the table on which the saw was placed and which resulted from the operation of the saw. Apparently, Cullipher thought that it was the duty of the plaintiff to remove the debris whereas plaintiff seems to have considered that he had no responsibility in that connection.

The saw was not defective. As we read the record, there was a guard over the top of the saw but no guard on the underside of it. Plaintiff was familiar with the saw and its operation, and he knew that there was no guard on the underside. He also knew that the saw was potentially dangerous, and in fact plaintiff considers that any saw, including an ordinary hand saw, is dangerous.

About nine days before the accident occurred a Safety Consultant employed by the Arkansas Department of Labor inspected the construction that was going on and

noted that there was no guard on the underside of the saw. He considered the condition to be unsafe and served a written notice of his finding on the prime contractor and probably on Sanders. It is not clear whether Cullipher or the plaintiff was aware of the inspection prior to the accident.

The accident occurred in substantially the following manner. Plaintiff had just finished sawing a board and had turned away from the saw to pick up another board leaving the saw in operation; in the course of his movement plaintiff lost his footing when he stepped on a piece of debris under the table on which the saw was located. He threw out his hand toward the underside of the table to check his fall; when he did that, his hand came in contact with the moving blade of the saw, and two of his fingers were cut to the extent that they had to be amputated.

Plaintiff collected workmen's compensation under the provisions of the Arkansas Workmen's Compensation Act, and then commenced this third party tort feasor action as authorized by Ark.Stats.Ann. § 81–1340.

Plaintiff alleged in his complaint that the respective defendants had been negligent in failing to provide him with a safe place to work and safe appliances with which to work and in failing to warn him about the dangerous condition of the saw.

The defendants in their answer denied negligence and took issue with plaintiff as to the amount of damages that he had sustained as a result of his injury. Affirmatively, the defendants pleaded contributory negligence and assumption of risk.

It appears that prior to the trial plaintiff had planned to call as a witness Mr. Ron Burnett, the Labor Department Safety Consultant, for the purpose of proving that the absence of a guard over the underside of the saw constituted a violation of the Arkansas Labor Department Act of 1937, Ark.Stats.Ann. §§ 81–101 et seq. However, in proceedings in limine the district court held that Mr. Burnett would not be permitted to testify as to any violation of the Act,

perhaps because of the fact that the Act applies only as between employers and their own employees, and plaintiff was not an employee of either of the defendants when he was injured. See Horn v. Shirley, 246 Ark. 1134, 441 S.W.2d 468 (1969). Burnett was permitted to testify that in his opinion as an expert the saw without the guard was dangerous, and that a manufacturer would be expected to equip his saws with proper guards.

After Burnett testified, plaintiff called his employer, Cullipher, as a witness and then took the stand himself. Thereafter plaintiff rested and the defendants moved for a directed verdict contending that there was no substantial evidence of negligence on the part of the defendants, and that the evidence established that as a matter of law the plaintiff was guilty of negligence that was equal to or greater than the negligence, if any, of the defendants, and that plaintiff had assumed the risk of injury.

The district court heard arguments on the motions and then announced that the motion would be granted. Before announcing its ruling the district court discussed the evidence in some detail. While the trial judge commented on the conduct of the plaintiff and on the fact that he was familiar with the saw and knew that it was dangerous, the district court did not find specifically that the plaintiff had been guilty of negligence or that he had assumed the risk of injury. As we characterize the district court's holding, it was based on the court's conclusion that the plaintiff had failed to make a submissible case on the threshold question of negligence on the part of the defendants.

■ In Arkansas a contractor is liable in tort to third parties, including employees of other contractors, if such third parties are injured as a proximate result of the contractor's own negligent acts or omissions. However, an employee of a subcontractor is not an employee of the general contractor or of some other subcontractor, Horn v. Shirley, supra, and ordinarily the contractor sought to be charged does not

owe to the employees of other contractors on the job the same duties that he owes to his own employees. And specifically, a contractor does not owe to employees of a subcontractor the duty to use care to supply them with safe working places or safe tools and appliances unless such duties have been assumed expressly or by implication. Mention has been made already of the decision of the Arkansas Supreme Court in *Horn v. Shirley, supra.* Other leading Arkansas cases are cited in *Dunn v. Brown & Root, Inc.,* 455 F.2d 717 (8th Cir. 1972), and in the earlier case of *Terry v. A. P. Green Fire Brick Co.,* 164 F.Supp. 184 (E.D.Ark.1958). *See also Corban v. Skelly Oil Co.,* 256 F.2d 775 (5th Cir. 1958) (applying Arkansas law).

In *Carroll v. Lanza,* 116 F.Supp. 491, 504 (W.D.Ark.1953), *rev'd in part on other grounds,* 216 F.2d 808 (8th Cir. 1954), *rev'd in turn on other grounds,* 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955), the district court pointed out that if a general contractor retains control over the premises where a subcontractor is working, then the general contractor owes a duty to employees of the subcontractor to use ordinary care to maintain the premises in a reasonably safe condition for the use of those employees. However, in 13 Am.Jur.2d, Building & Construction Contracts, § 135, pp. 126–27, it is said that the duty of the general contractor in this respect is "co-extensive only with the general contractor's possession and control of the premises—that is, it devolves upon him because of the control undertaken or exercised by him, rather than merely because of his position as a general contractor." As has been seen, the place at which plaintiff was working when he was hurt was not under the control of either of the defendants.

■ Although a general contractor may be liable to an employee of a subcontractor on account of the unsafe conditions of tools and appliances which the general contractor

was required to furnish, ordinarily it is the obligation of a subcontractor to supply his own employees with tools and appliances, and a general contractor is not liable for the negligence of the subcontractor in furnishing unsafe tools or appliances. *See* 57 C.J.S. Master and Servant § 604.

■ It sometimes happens that one subcontractor on a job will lend tools or equipment to another subcontractor with knowledge that the tools or equipment will be used by employees of the latter. In such a situation the lending party may be held liable to an employee of the borrowing party arising from a patent defect in the tools or equipment lent if the lender was compensated for the bailment, or if the bailment was mutually advantageous to the lender and the borrower. But if lender received no compensation from the borrower and derived no advantage or benefit from the arrangement, then he is not liable for injury to an employee of the borrower. 13 Am.Jur.2d, Building & Construction Contracts, § 137; *Arthur v. Standard Engineering Co.,* 89 U.S.App.D.C. 399, 193 F.2d 903, 32 A.L.R.2d 408 (1951); *see also* Annotation, "Duty and liability of subcontractor to employee of another contractor using equipment and apparatus of former," 32 A.L. R.2d 414.

Under the evidence in this case it is clear that Sanders received no compensation for lending the saw to Cullipher and derived no benefit from the transaction. And U. S. Construction Company had nothing whatever to do with the lending of the saw. There was no occasion for anyone to warn plaintiff that the saw was potentially dangerous; he knew that already.

■ In other words, there was no evidence that either of the defendants in this case breached any duty that it owed to plaintiff, and in the absence of a breach of duty, there can be no negligence.[1]

---

1. We have mentioned the fact, as did the district court, that the plaintiff knew that the saw had *no* guard on the underside, and that he might be injured as a result of using the saw.

An employee's knowledge that a tool that he is using or that he is about to use is dangerous and his appreciation of the risk involved is relevant not only to the question of whether the employee "assumed the risk of injury" in the

From what has been said, it follows that the district court did not err in taking the case from the jury, and the judgment of the district court in favor of the defendants is affirmed.

UNITED STATES of America,
Plaintiff-Appellant,

v.

Ira O'NEAL, Defendant-Appellee.

No. 76–1043.

United States Court of Appeals,
Ninth Circuit.

Sept. 30, 1976.

As Amended on Denial of Rehearing and Rehearing En Banc Jan. 10, 1977.

Lawrence Edelman, Asst. U.S. Atty. (argued), San Francisco, Cal., for plaintiff-appellant.

Bill Goodman, Asst. Federal Public Defender (argued), San Francisco, Cal., for defendant-appellee.

technical sense of that term but also to the question of whether the person who furnished the tool was guilty of initial negligence in doing so. One who furnishes a tool to an experienced workman has a right to assume, at least to some extent, that the workman is a person of common sense and will use at least some care for his own safety. *See Norris v. Daves,* 251 Ark. 101, 470 S.W.2d 937 (1971).

In years predating the adoption of the original Arkansas Workmen's Compensation Act in 1939 and when Arkansas was much less of an industrialized state than it is today, the Arkansas Supreme Court had held in a number of cases that if an employee knowingly worked with a dangerous tool or instrumentality, and appreciated the risk of injury therefrom, he assumed the risk of injury and could not recover damages from his employer if injury oc-

curred, even though the employee's use of the tool was the result of economic compulsion to hold his job.

In *Rhoads v. Service Machine Co.,* 329 F.Supp. 367 (E.D.Ark.1971), which was a products liability suit brought by an injured employee against the manufacturer of an unguarded drill press, the writer, who was then on the district bench, noted the existence of the line of cases just mentioned and expressed the doubt that the Arkansas Supreme court would adhere to those cases should the question arise today. 329 F.Supp. at 378–81.

As we have stated, we do not consider that the action of the district court in directing a verdict for the defendants in this case was predicated on the doctrine of "assumption of risk." And we wish to make it clear that we do

Before CARTER, LAY * and WRIGHT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Appellant asks that we overrule or distinguish this court's recent decision in *United States v. Pricepaul*, 540 F.2d 417 (9th Cir., 1976, as modified Aug. 9, 1976). There, we held that a prior state conviction obtained in violation of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), cannot be used to establish a federal firearms violation.[1] We decline appellant's invitation and affirm.

Defendant-appellee, indicted on two counts of federal firearms violations, moved to strike the evidence of a prior felony on the ground that the predicate conviction was obtained unconstitutionally. Count I alleges that O'Neal made a false statement in connection with the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6).[2] Count II alleges that he violated 18 U.S.C. App. § 1202(a),[3] possession of a firearm by a convicted felon.

In 1948, defendant pleaded guilty in district court to a felony, importation of marijuana. Although the record of his conviction remains, all government notes and materials concerning the 1948 proceeding have been destroyed.

In March 1974, O'Neal purchased a high powered 9mm Browning pistol in Oakland, California. In connection with that purchase, O'Neal averred on Internal Revenue Service Form 4473 that he had not been convicted of a crime punishable by imprisonment for a term exceeding one year.

Following the indictment filed in August 1975, defendant moved to strike the prior felony conviction. O'Neal's supporting affidavit asserts that he was not represented by counsel, not advised of his right to counsel, not informed of the nature of the charge against him, and not advised of the consequences of his plea in the 1948 proceeding.

At the hearing on defendant's motion in October 1975, O'Neal testified to the circumstances surrounding his 1948 guilty plea. Based on O'Neal's uncontroverted showing that a necessary element of the appellant's affirmative case, the 1948 felony conviction, was constitutionally infirm, the district court properly granted the motion to strike the prior conviction and dismissed the indictment prior to trial.

AFFIRMED.

---

not consider that the doctrine is an issue in connection with this appeal.

* Honorable Donald P. Lay, United States Circuit Judge of the Eighth Circuit, sitting by designation.