WINFREY & CARLILE *v.* NICKLES, ADMR.

5-454

ST. PAUL-MERCURY INDEMNITY COMPANY *v.* NICKLES, ADMR.

5-455                                                         270 S. W. 2d 923

Opinion delivered June 28, 1954.

[Rehearing denied October 4, 1954.]

G. *Byron Dobbs* and *Goodwin & Riffel,* for appellant.

*Rose, Holland, Holland & Smith, Robinson & Edwards, J. H. Lookadoo* and *Hardin, Barton, Hardin & Garner,* for appellee.

GEORGE ROSE SMITH, J. These are two companion appeals, one from a circuit court judgment reversing an order of the Workmen's Compensation Commission and the other from an allied circuit court order distributing certain funds in the registry of the court. The only issue is whether the court was correct in directing that from the funds in question the sum of $3,031.35 be paid to the firm of Hardin, Barton & Hardin as an attorney's fee.

On August 4, 1952, Will Roy Nickles, an employee of Winfrey & Carlile, was killed in a traffic collision while acting in the scope of his employment. In due course his employers and their compensation insurance carrier, St. Paul-Mercury Indemnity Company, admitted liability under the Workmen's Compensation Act and began making weekly payments to the dependent parents of the decedent.

Jennings J. Stein and his wife, occupants of the car which collided with the truck being driven by Will Roy Nickles, were both injured in the collision. Shortly after the accident they brought suit for damages against the appellee, Bill Nickles, as administrator of the estate of his son, Will Roy Nickles. Bill Nickles employed the

Hardin law firm to defend the case and to file a cross-complaint against Stein for damages for the death of Will Roy. The contract provided for a contingent fee of fifty per cent of any amount recovered, after the payment of court costs and other expenses.

The Workmen's Compensation Act provides that when a tort action for the injury or death of an employee is brought against a third person, the employer or his compensation insurance carrier may intervene and assert a lien, up to two-thirds of the net recovery, for amounts paid and to be paid as workmen's compensation. Ark. Stats. 1947, § 81-1340. Accordingly St. Paul, as insurance carrier for Will Roy Nickles' employer, retained attorney G. Byron Dobbs to file an intervention in the Stein-Nickles litigation for the purpose of claiming a lien upon any recovery obtained by Bill Nickles as administrator.

It happened that St. Paul had also issued an automobile liability policy to Stein and was thereby obligated to defend the cross-complaint for him and to pay any adverse judgment, up to the policy limit. Thus St. Paul was asserting a lien upon the proceeds of Bill Nickles' cause of action and at the same time was required to defend against that cause of action. In an effort to be impartial St. Paul employed another law firm, Shaw, Jones & Shaw, to defend the case for Stein. The Shaw firm and St. Paul's other attorney, Dobbs, did not exchange information or make their files available to each other.

The case was tried on March 23, 1953, and resulted in a verdict for Nickles in the sum of $6,433.10. Dobbs took no active part in the trial, the case being handled by the Shaw firm for Stein and by the Hardin firm for Nickles. Judgment having been entered upon the verdict, St. Paul, as Stein's liability insurer, paid the amount of the judgment into the registry of the court.

There then arose the question of the correct distribution of the money. All parties agreed to a court order by which this question was referred to the Workmen's

Compensation Commission for determination. After taking testimony the Commission delivered an opinion holding that the contract between Nickles and the Hardin firm was binding only as to that part of the recovery that belonged to Nickles. The opinion further indicated that the Hardin firm could have applied to the Commission for a reasonable fee to be taxed against St. Paul's two-thirds interest in the recovery, but since no such application had been made the Commission did not charge any attorney's fee against St. Paul. Upon this reasoning the Commission first deducted the court costs and other trial expense incurred by Nickles and then directed that two-thirds of the remaining net recovery be paid to St. Paul and that the other one-third be divided equally between Nickles and his counsel.

Upon appeal from the Commission's order the circuit court set aside the Commission's action and held that, after the deduction of costs and expenses, the Hardin firm was entitled to half of the entire net recovery, with the other half to be distributed in the ratio of two-thirds to St. Paul and one-third to Nickles. Thus it will be seen that the appellee Nickles has no pecuniary interest in the present controversy, for both the Commission and the circuit court awarded him exactly one-sixth of the net proceeds. The issue is whether the Hardin firm is entitled to share in St. Paul's part of the net recovery.

This question centers entirely upon a construction of § 40 of the Compensation Act, Ark. Stats., § 81-1340, and really involves three distinct inquiries. First, was the Hardin-Nickles contract binding upon St. Paul? We agree with the Commission's view that it was not. In a third-party action of this kind § 40 quite plainly recognizes separate causes of action in the compensation beneficiary and in the compensation carrier. By subsection (a) the compensation beneficiary is permitted to institute the action, with notice to the carrier so that it may intervene. By subsection (b) the carrier itself may institute the action, joining the compensation beneficiary so that all issues may be settled in one case. There is nothing in the Act to indicate that either plaintiff may force his

own attorney upon the other. As a practical matter we know that the beneficiary is apt to have a lawyer of his own and that an insurance company almost always has counsel that are regularly retained. Hence the Hardin firm, in making its contract with Nickles, must be taken to have known that it did not thereby assume a contractual relationship with St. Paul. The Commission was correct in concluding that Hardin, Barton & Hardin's claim against St. Paul does not rest upon the contract with Nickles.

Second, does subsection (c) of § 40 require that in a case like this one the Commission must approve any allowance of attorneys' fees or other costs of collection? It will be remembered that subsection (a) allows the beneficiary to begin the action, subject to intervention by the carrier, and that subsection (b) allows the carrier to take this initiative, subject to joinder of the beneficiary. Both these subsections provide that the beneficiary is entitled to one-third of the recovery in any event, that the carrier is entitled to the other two-thirds or so much thereof as does not exceed its compensation liability, and that any excess above the latter goes to the beneficiary. Both subsections provide that the division is to be made after the deduction of "reasonable costs of collection." Then follows subsection (c), which reads:

"(c) Settlement of such claims under subsections (a) and (b) of this section must have the approval of the Court or of the Commission, except that the distribution of that portion of the settlement which represents the compensation payable under this act must have the approval of the Commission. Where liability is admitted to the injured employee or his dependents by the employer or carrier, no cost of collection shall be deducted from that portion of the settlement under subsections (a) and (b) of this section, representing compensation, except upon direction and approval of the Commission."

St. Paul stresses the second sentence of subsection (c) in arguing that since it admitted compensation lia-

bility to the dependents of Will Roy Nickles it cannot be charged with any costs of collection except by direction of the Commission. In making this argument St. Paul insists that the word settlement, as used in the second sentence, means any recovery. The appellees answer that the word settlement means a compromise settlement, and since the Stein-Nickles case proceeded to a jury verdict subsection (c) has no application.

Our study convinces us that subsection (c) is decidedly vague, that neither construction of the word settlement leads to consequences entirely logical. But we must take the statute as we find it, and in our opinion the legislature meant compromise settlements only. In reaching this conclusion we are influenced by the legislative history of subsection (c) and by the practical results of the two differing interpretations.

In the original Compensation Law, Act 319 of 1939, § 40 contained substantially the present third-party arrangement, in that the proceeds, after the deduction of reasonable costs of collection, were divided between the compensation beneficiary and the carrier in a similar one-to-two ratio. But what is now subsection (c) of the 1948 revision of the law was originally a single sentence: "Settlement of such claims and the distribution of the proceeds therefrom must have the approval of the court or of the Commission." Ark. Stats., § 81-1340, as it read prior to the 1948 amendment.

It cannot be doubted that the 1939 statute, in the sentence quoted, referred only to compromise settlements. When a case is brought to trial and results in a verdict for the plaintiff, there is no conceivable reason for the award to be specially approved by either the court or the Commission. There is, however, good reason to require that a compromise settlement be so approved, for it is a basic theory of workmen's compensation legislation that neither the injured employee nor his dependents are to be allowed to sacrifice their rights by improvident settlements.

Our present subsection (c) is a revision and an enlargement of the original sentence. It, too, however, requires that the settlement be approved by the court or the Commission, and for the reasons already stated we think the language refers to compromise settlements alone.

In practical effect this construction is desirable. Here we have a contested tort action, involving a trial that lasted for two days. The Commission is certainly in no position, without a hearing, to determine what is reasonable compensation for the plaintiffs' counsel. For it to make that determination in a case of this kind the record might have to be transcribed and submitted to the Commission. What began as one lawsuit might easily become two.

The circuit judge, on the other hand, is obviously the person best able to fix the fee. Not only has he presided over the trial but he is qualified by training and by experience to assess reasonable compensation for legal services. It would be manifestly illogical to require the circuit judge to surrender jurisdiction over a matter in which his own judgment is peculiarly valuable.

On the second question we conclude that subsection (c) of § 40 does not apply to a contested case. It was therefore unnecessary for the circuit court to refer the matter to the Commission, and we treat that reference as surplusage. The appeal to the circuit court merely reinstated jurisdiction that already existed, and we review the court's action without regard to the Commission's decision.

Third, was the court correct in allowing the Hardin firm fifty per cent of St. Paul's two-thirds interest in the net recovery? We think it was. This phase of the case is more easily understood if we disregard for the moment the fact that St. Paul was also Stein's insurer and was therefore in the position of suing itself.

Had it not been for St. Paul's dual liability the employment of counsel would have come about in this

fashion: Nickles, as administrator, retained the Hardin firm as his attorneys, for an agreed fee of half of his interest in the recovery. St. Paul would then have had a genuine interest in the case, since it stood to recoup its entire compensation liability from the third-party tortfeasor. Accordingly St. Paul might either have retained the Hardin firm as its counsel, for a compensation mutually agreed upon, or have employed another attorney of its own choice. In either event the present question would not have been likely to arise, for ordinarily the court would simply have apportioned the recovery between the two plaintiffs, leaving each to pay his own counsel. Thus in the normal situation St. Paul would incur liability for an attorney's fee in the course of pursuing the tortfeasor.

Here, however, St. Paul was pursuing itself, and its pecuniary interest lay entirely in defeating Nickles' claim. That is, its compensation liability was fixed regardless of the outcome, but at least one-third of any judgment against Stein would have to be paid by St. Paul to the administrator, in addition to the compensation payments. In these circumstances it was to St. Paul's interest to intervene on Nickles' side of the case, just to be certain that all of its own money did not go to Nickles, and then to resist the claim as strenuously as possible in behalf of Stein. Thus there was never any real possibility either that St. Paul would employ the Hardin firm or that St. Paul's own counsel would be of any assistance to that firm.

Accordingly it was entirely through the efforts of the Hardin firm that Nickles recovered a judgment for $6,433.10. That St. Paul stood to lose rather than to win by their services had no bearing upon the time, effort, and skill required in the preparation and trial of the case. Nor should this law firm be penalized by reason of St. Paul's unhappy predicament. Not infrequently it must happen that a casualty insurer finds itself bound to defend both sides of an automobile collision case, so that it pays one attorney for winning the case and another for losing it, in addition to paying the judgment. This

is simply one of the hazards that attend the business of writing liability insurance. The circuit court was right in assessing this attorney's fee upon the basis of what would have been fair had St. Paul been a wholehearted and enthusiastic cross-complainant in the litigation, and it is not contended that in that situation the sum allowed would be excessive.

Affirmed.