1134

HARLAN RAY HORN v. BYRON SHIRLEY, D/B/A SHIRLEY
TRUCKING COMPANY

5-4930                                                      441 S.W. 2d 468

Opinion Delivered June 2, 1969

*Sexton & Wiggins* and *Hixson & Douglas* for appellant.

*Bethell, Stocks, Callaway & King* for appellee.

GEORGE ROSE SMITH, Justice. This action for personal injuries was tried before a jury and ended in a verdict for the defendant. At the trial the plaintiff con-

tended that under Act 161 of 1937, which we will call our Labor Department Act, the measure of the defendant's duty to provide the plaintiff with a safe place to work exceeded the common-law standard of ordinary care and in effect was that of an insurer. Ark. Stat. Ann. §§ 81-101 through 81-121 (Repl. 1960). The trial court rejected that contention and submitted the case to the jury under AMI instructions which told the jury that at the time of the accident the defendant Shirley and his employee Utley were under a duty to exercise ordinary care for the safety of the plaintiff. It was the trial judge's belief that the Labor Department Act was not applicable to the case, for the reason that there had been no employer-employee relationship between the plaintiff and the defendant. Whether that ruling by the trial court was correct is the principal issue on appeal.

The controlling question being wholly one of law, we need state only the salient facts that emerge from an extensive record. The plaintiff Horn was regularly employed as a driller and oil-field roughneck by Miller Drilling Company. In May of 1967 Miller completed the drilling of an oil well and needed to move its equipment to another location. Miller engaged the defendant Shirley, doing business as Shirley Trucking Company, to handle the move. For the job Shirley supplied a tractor-trailer rig operated by Shirley's employee, C. H. Utley. Miller instructed two of its employees, Parker and the plaintiff Horn, to help Utley load the equipment.

Two large 10,000-pound motors had to be loaded on the trailer. The tractor had a winch-and-cable attachment that was used to pull the first motor onto the rear half of the trailer. Utley then decided to disconnect the tractor and trailer, thereby letting the front end of the trailer down to the ground, load the second motor onto the bed of the tractor, and then transfer the motor from the tractor bed to the front half of the trailer.

The motors were permanently equipped with steel skids similar to railroad tracks. As the second motor was being winched onto the bed of the tractor one of its skids got caught under the edge of the tractor's fifth wheel. At Utley's suggestion Parker and Horn picked up crowbars and tried to pry the motor away from the fifth wheel. In some way, assertedly as a result of Utley's changing the tension on the winch cable, the motor shifted its position and dropped down on the lower end of Horn's crowbar. That caused the other end of the bar to snap upward and strike Horn's chin and jaw with great force, inflicting severe and painful injuries.

Horn, as we have said, was employed by Miller, not by the defendant Shirley. Horn's attorney, in view of the proof, did not request an instruction submitting to the jury the question whether Horn had become Shirley's employee under the borrowed-servant doctrine. See *Bell Transp. Co.* v. *Morehead,* 246 Ark. 170, 437 S.W. 2d 234 (1969); *Transport Co. of Texas* v. *Ark. Fuel Oil Co.,* 210 Ark. 862, 198 S.W. 2d 175 (1946). Hence the case comes to us with no contention that Horn was acting other than as a regular employee of Miller at the time of the accident.

The pivotal issue of law is a narrow one. The appellant insists that under the Labor Department Act he was entitled to instructions imposing upon Shirley an absolute duty to provide Horn with a safe place to work rather than a common-law duty merely to exercise ordinary care to do so. To sustain that contention Horn must succeed in establishing two propositions: First, it must be found that the Labor Department Act imposed the absolute duty that Horn invokes. (For differing views upon that point see *Carter* v. *Frazer Const. Co.,* 219 F. Supp. 650 [W.D. Ark. 1963], and *Crush* v. *Kaelin,* 419 S.W. 2d 142 [Ky. 1967].) Secondly, it must be found that Shirley owed that absolute duty to Horn, even though there was no employer-employee relationship between them.

We find it unnecessary to discuss the first proposition, because in our opinion the trial court was right in holding that the absence of an employer-employee relationship rendered the Labor Department Act inapplicable to the fact situation presented by this litigation.

The Labor Department Act is a comprehensive statute containing 26 sections, most of which have no direct bearing upon this case. The appellant relies entirely upon sections 1 and 9 (a), which we quote:

Section 1. DEFINITIONS. That when used in this Act, "employer," includes every person, firm, corporation, partnership, stock association, agent, manager, representative, or foreman, or other person having control or custody of any employment, place of employment, or of any employee. Provided this Act shall not affect any employer engaged exclusively in farming operations. Provided further it shall affect employers employing five persons or over only. Ark. Stat. Ann. § 81-101.

Section 9. EMPLOYER'S DUTY AS TO SAFETY. (a) Every employer shall furnish employment which shall be safe for the employees therein and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees; ... Id., § 81-108.

The appellant, in arguing that the Act imposes upon every employer subject to the statute a mandatory duty to insure the safety of persons other than his own employees, relies upon clauses in the quoted sections that refer to "employment" and to "place of employment" and to "employees." Specifically, Section 1 defines an employer as a person having control or custody of

"any employment, place of employment, or of any employee." Section 9 (a) requires an employer to adopt and use methods and processes reasonably adequate to render "such employment and place of employment" safe. With much ingenuity counsel argue that "employment" and "place of employment" and "employees" must all be treated as mutually exclusive terms, so that each must have been intended by the legislature to include throughout the Act some shade of meaning not subsumed by the other two. Upon that reasoning counsel insist that the employer's statutory duty to furnish employment which shall be safe for the employees therein and also to make both the employment and the place of employment safe must be construed to mean that the employer's duty extends to all employees who are working on the premises, whether they are employed by him or by someone else. Hence, it is said, the defendant Shirley owed the statutory duties to Horn because Horn was an employee, albeit not an employee of Shirley.

The argument being made is so involved and so tenuous that we have really found more difficulty in stating it than in answering it. We think it sufficient to discuss briefly a few of the considerations that compel us to conclude that counsel's interpretation of the statute goes far beyond the manifest intent of the legislature.

First, when the Act is read as a whole there were sound reasons for the definition of an employer to include a person having control or custody of any employment, place of employment, or employee—all three. The Act is a comprehensive measure having as its primary purpose the creation of a Department of Labor and the enumeration of the Department's powers and duties. Some sections have to do only with "employment," such as the duty of the newly created Commissioner of Labor to assist in avoiding lockouts, boycotts, black lists, and discriminations. Section 7 (e). Some sections have to do only with the place of employment, such as the Com-

missioner's duty to affix a warning notice to any machine or equipment found to be dangerous. Section 9 (c). Some sections have to do only with employees, such as the employer's duty to keep a record of the hours and wages of each of his employees. Section 14 (b). Obviously any definition of "employer" that did not refer to employment, place of employment, and employees—all three—might not have been broad enough to include all employers that were meant to fall within the reach of the statute.

Secondly, there was a similar reason for Section 9 (a) to require employers to render safe both the employment and the place of employment. Neither term includes the other in its entirety in every context. Employment is defined by the Random House Dictionary (1966) as the "state of being employed; ... service; ... an occupation by which a person earns a living; work; business." Those definitions refer essentially to conduct rather than to the physical place of employment. That the lawmakers thought it best to use both terms, for clarity, does not mean that they intended a strained construction by which their language would include something not fairly falling within the ordinary meaning of either term.

Thirdly, "employer" and "employee" are correlative terms. Each implies the existence of the other, just as "parent" implies the existence of a "child," and "husband" implies the existence of a "wife." A law that defines the rights and duties of husbands and wives has reference to the obligations of each husband to his own wife, not to the wife of another. Similarly, the duty of an employer to employees clearly means to his own employees and not to those of some other employer, unless the language permits no other conclusion. This precise problem was met by a similar Wisconsin statute, which encompassed not only employees but also "frequenters" of the premises. See *Globig* v. *Greene & Gust Co.*, 201 F. Supp. 945 (E.D. Wis. 1962). Our statute is markedly dissimilar from that one.

Fourthly, when the Labor Department Act was adopted we had no workmen's compensation law. Hence there was a much greater need for the legislature to provide the working man with a cause of action against his own employer for injuries resulting from unsafe conditions than there would be today. We must construe the act in its proper historical setting.

Finally, the Labor Department Act was a penal measure, imposing penalties of fines and imprisonment for violations of its provisions, with each day of violation constituting a separate offense. Section 21. We have held that the Act, being penal, must be strictly construed. *Gordon* v. *Matson,* 246 Ark. 533, . S.W. 2d (1969). If we had any doubt about the proper construction of the Act—and we have none—the rule of strict construction would set that doubt at rest.

To this point we have discussed only the appellant's main argument for reversal. He also contends that there is no substantial evidence to support the jury's verdict for the defendant. The obstacles in the path of such an argument were discussed in *Spink* v. *Mourton,* 235 Ark. 919, 362 S.W. 2d 665 (1962), and need not be re-examined. Here, under the evidence and the court's instructions, the jury might have found that the plaintiff failed to prove his charge of negligence in the defendant, that the plaintiff assumed the risk of the danger, or that the plaintiff's own negligence exceeded that of the defendant. Those matters all turn upon the preponderance of the evidence. As we observed in the *Spink* case, the trial judge may grant a new trial if he finds the verdict to be against the preponderance of the evidence. We, however, are bound by the substantial evidence rule. It cannot be said that there is no substantial evidence to support this verdict.

Affirmed.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice.    I concur in the result reached by the court, but I do not agree with the route by which that end is reached.    Nor do I agree that the instructions requested would make appellee the insurer of appellant's safety, because each was couched in statutory language requiring "reasonably adequate" methods and processes and other things "reasonably necessary" to protect the employee's life, health, safety and welfare.    See Ark. Stat. Ann. § 81-108 (Repl. 1960).    I take a view closely akin to that expressed by the Kentucky Court of Appeals in *Crush v. Kaelin*, 419 S.W. 2d 142 (1967).    In considering a similar statute in which language is identical with that employed in the pertinent sections of Act 161 of 1937 (Ark. Stat. Ann. § 81-101 through § 81-121), that court held no duties greater than those imposed by the common law were imposed on the employer by the general provisions of their act for safe places of employment, safe methods and practices and reasonable safeguards.    That court found the provision for formulation of standards by an administrative body inconsistent with any such purpose.    That court recognized the possibility that a specific standard or regulation once promulgated might be the basis for a greater duty of the master to the servant.    Our act contains Section 10 (Ark. Stat. Ann. § 81-109) conferring the power on the Commissioner of Labor to make reasonable rules for the prevention of accidents in every employment or place of employment and for the construction, repair and maintenance of places of employment.

While I adhere to the views expressed in my dissenting opinion in *Gordon* v. *Matson*, 246 Ark. 533, 439 S.W. 2d 627, when there is an allegation or proof that a specific regulation has been violated, I believe that Ark. Stat. Ann. § 81-108 is merely a statement of the purposes to be accomplished by promulgation and enforcement of the regulations adopted.    If the employer's duty is to be measured by the general language of § 81-108, I can

see no useful purpose that was served by authorizing the promulgation of rules and regulations establishing safety standards to be followed by an employer, if his duty is established by the broad general language of the preceding section.