## THE HARTFORD INSURANCE GROUP v.
HARRIET CARTER AND BEL-AIR Sales Company, INC.

5-5663                                    473 S.W. 2d 918

Opinion delivered December 20, 1971

*Daily, West, Core & Coffman,* for appellant.

*Jones, Gilbreath & Jones,* for appellees.

CONLEY BYRD, Justice. The issue on this appeal by The Hartford Insurance Group is whether a release executed by an employee to a third party tortfeasor before the filing of a workmen's compensation claim is a defense to the employer's subsequent action against the tortfeasor brought pursuant to Ark. Stat. Ann. § 81-1340 (b) (Repl. 1960).

The record shows that appellant, The Hartford Insurance Group, hereinafter referred to as the compensation carrier, was the workmen's compensation insurance carrier for Bill Yates Buick-GMC, Inc., on October 2, 1969. On that date Paul Ruth, an employee of Bill Yates Buick-GMC Inc., had an automobile collision with appellee Harriet Carter, an employee of appellee Bel-Air Sales

Company, Inc., (the appellees will hereinafter be referred to as third parties). On October 29, 1969, Paul Ruth, the employee, settled his and his wife's claim for personal injuries with the third parties for $1,000 and executed a complete release. Subsequently the employee made a claim for workmen's compensation benefits. The workmen's compensation claim, which could have been compensable for approximately $2,500.00, was settled by joint petition with the approval of the Workmen's Compensation Commission for $1,760.45. Admittedly the compensation carrier did not notify the third parties of its subrogation rights until March 19, 1970. It is not contended that the employee gave the compensation carrier notice of his claim against the third parties before the settlement. The record is also silent as to whether the compensation carrier knew of the third party release when it compromised the workmen's compensation claim on March 17, 1970.

The compensation carrier brought this action against the third parties pursuant to Ark. Stat. Ann. § 81-1340(b) to recover the $1,760.45 paid to the employee Paul Ruth. On a motion for summary judgment, the trial court held that the employee's release to the third parties was binding on the compensation carrier. For reversal the compensation carrier states the issues in this manner:

"Appellant has no contention with and does not argue against the well established rule of equitable and contractual subrogation law that a subrogee succeeds to only those rights against a third party which were held by the subrogor at the time the subrogation right was created, neither does appellant contend with the consequential rule that a release of the third party by the subrogor prior to a payment creating a subrogation right in the subrogee bars a later attempt by the subrogee to enforce the subrogation right. See, e. g., Home Insurance Company v. Dearing, 248 Ark. 574, 542 S. W. 2d 852 (1970); Phillips v. Worthen, 220 Ark. 877, 251 S. W. 2d 118 (1952). It is the contention and argument of the appellant that the 'action in tort' created by the Arkansas Workmen's Compensation Act in compen-

sation carriers such as the appellant takes on certain legal characteristics which distinguishes it from ordinary equitable and contractual subrogation rights. Appellant does not contend that the statutorily created 'action in tort' is an entirely distinct cause of action. Rather, appellant contends that the 'action in tort' has some characteristics, but not all characteristics, which distinguishes it from normal subrogation rights, and that one of the distinguishing characteristics is that the action is not destroyed by a release given to a third party by the employee prior to the payment of workmen's compensation benefits and without the consent of the employer or the employer's workmen's compensation carrier."

The particular section of the Workmen's Compensation Law here involved is Ark. Stat. Ann. § 81-1340 which provides:

"(a) LIABILITY UNAFFECTED. (1) The making of a claim for compensation against any employer or carrier for the injury or death of an employee shall not affect the right of the employee, or his dependents, to make claim or maintain an action in court against any third party for such injury, but the employer or his carrier shall be entitled to reasonable notice and opportunity to join in such action. If they, or either of them, join in such action they shall be entitled to a first lien upon two-thirds [2/3] of the net proceeds recovered in such action that remain after the payment of the reasonable costs of collection, for the payment to them of the amount paid and to be paid by them as compensation to the injured employee or his dependents.

(2) The commencement of an action by an employee or his dependents against a third party for damages by reason of an injury, to which this act [§§ 81-1301 —81-1349] is applicable, or the adjustment of any such claim shall not affect the rights of the injured employee or his dependents to recover compensation, but any amount recovered by the injured employee or his dependents from a third party shall be applied

as follows: Reasonable costs of collection shall be deducted; then one-third [1/3] of the remainder shall, in every case, belong to the injured employee or his dependents, as the case may be; the remainder, or so much thereof as is necessary to discharge the actual amount of the liability of the employer and the carrier; and any excess shall belong to the injured employee or his dependents.

"(b) SUBROGATION. An employer or carrier liable for compensation under this act [§§ 81-1301—81-1349] for the injury or death of an employee shall have the right to maintain an action in tort against any third party responsible for such injury or death. After reasonable notice and opportunity to be represented in such action has been given to the compensation beneficiary, the liability of the third party to the compensation beneficiary shall be determined in such action as well as the third party's liability to the employer and carrier. After recovery shall be had against such third party, by suit or otherwise, the compensation beneficiary shall be entitled to any amount recovered over and above the amount that the employer and carrier have paid or are liable for in compensation, after deducting reasonable costs of collection, and in no event shall the compensation beneficiary be entitled to less than one-third [1/3] of the amount recovered from the third party, after deducting the reasonable cost of collection.

"(c) SETTLEMENT OF CLAIMS. Settlement of such claims under subsections (a) and (b) of this section must have the approval of the Court or the Commission, except that the distribution of that portion of the settlement which represents the compensation payable under this act [§§ 81-1301—81,-1349] must have the approval of the Commission. Where liability is admitted to the injured employee or his dependents by the employer or carrier, no cost of collection shall be deduced from that portion of the settlement under subsections (a) or (b) of this section, representing compensation, except upon direction and approval of the Commission."

When section 40 of the Workmen's Compensation Law is viewed from the drafter's standpoint, it is at once obvious that the drafters were generally dealing with the correlative rights of employee and employer relative to bringing third party tort actions and distribution of the proceeds. The only place the drafters attempted to place any burden upon third parties ,tortfeasors different from their common law duty was in subsection (a) (1) wherein it was specifically provided that the employer or its carrier would have a lien upon the proceeds if it should join in an action by the employee against the third party. However, it is to be noted that the drafters in providing the manner for perfecting the employer's lien on the proceeds also provided an adequate notice to the tortfeasor by requiring that the employer either join or intervene in the action against the tortfeasor. Having thus provided a manner and method of perfecting the employer's lien on the proceeds, the third party tortfeasor should have every right to proceed according to the common law as if no employer is involved until such time as the lien is perfected. In fact subsection (a) (2) recognizes that an employee can make such an adjustment before filing a Workmen's Compensation claim by providing a procedure for the application of the proceeds thereof between the employee and the employer when a claim is filed.

In *St. Paul Fire & Marine Insurance Company* v. *Wood*, 242 Ark. 879, 416 S. W. 2d 322 (1967), we held that Section 40 recognized but one cause of action against the third party tortfeasor. We can find nothing in Section 40 (b) that would make the third party's liability to the employer any greater than that of any other subrogation claimant. *Winfrey and Carlile* v. *Nickles, Admr.,* 223 Ark. 894, 270 S. W. 2d 923 (1954), upon which the compensation carrier relies, merely involved a controversy between the employee and the employer relative to the employer's obligation for expenses of recovery. *St. Paul Fire & Marine Ins. Co.* v. *Wood, supra,* involved a court approved compromise pursuant to subsection (c) by which the third party tortfeasor was permitted to buy his peace from the employee at a discount the employer was unwilling to take. The common law liability of the

third party tortfeasor to the employer was not increased in either case.

Finally the compensation carrier argues that the release is ineffectual as to it because the third parties failed to obtain the court approval of the settlement required by Section 40(c). We find no merit in this contention. In the first place there is no showing that the third parties knew that they were settling a claim under subsections (a) and (b). In the next place it does not appear that the drafters of the Compensation Law intended for subsection (c) to be binding upon third party tortfeasors. Rather it appears to us that the purpose of subsection (c) was to permit the adjustment of controversies between the employee and employer such as occurred in *St. Paul Fire & Marine Ins. Co.* v. *Wood, supra,* and to require that settlements as between them have the approval of either the court or the Workmen's Compensation Commission to prevent an employee from compromising his claims through his tort action in a manner that would not be permitted under the Compensation Law as by way of joint petition.

See Ark. Stat. Ann. § 81-1319(i). To hold subsection (c) applicable to third party tortfeasors would leave the adequacy or inadequacy of a compromise settlement approved by both the employer and the employee to the discretion of a court or the Commission. There is nothing in the Workmen's Compensation Law to indicate that any such far reaching result was intended.

The public policy of this State is to encourage settlements of tort claims. No greater harm would be done to an employer by permitting a conscientious citizen to amicably settle his just obligations before the employer has paid compensation than would be done to the conscientious citizen by making him, as a third party, pay twice for the same obligation. If we should accept the compensation carrier's interpretation of Section 40(c), no citizen could effectively obtain a tort release from his neighbor without the employment of a lawyer to file a complaint and causing a court to hear enough facts to

approve a settlement. A law making it that difficult for a citizen to discharge his just obligations without running the risk of having to pay twice should be plain and unequivocal in its application to a tortfeasor.

Cases from other jurisdictions can be found going both ways on the issues involved here. Such decisions usually turn upon the particular wording of the statute involved. Our construction here is not only consistent with the statute's design of a lien only upon notice to third parties of the employer's claims but also conforms to the general proposition that statutes imposing burdens and liabilities unknown at common law are to be strictly construed in favor of those upon whom the burden is sought to be imposed. See *Thompson, Commissioner of Revenues* v. *Chadwick,* 221 Ark. 720, 255 S. W. 2d 687 (1953) and *State* v. *International Harvester Co.,* 79 Ark. 517, 96 S. W. 119 (1906).

Affirmed.

HARRIS, C. J. & FOGLEMAN, J., dissent.

CARLETON HARRIS, Chief Justice, dissenting. I very much disagree with the holding by the majority. Statutes are designed to give fair play to all parties in a controversy and, in my view, this result is certainly not reached in this litigation. Ark. Stat. Ann. § 81-1340 (Repl. 1960), set out in full in the majority opinion, in sub-section (a) sets out the requirements to be met by an employee when he institutes suit against a third party tortfeasor. Sub-section (b) sets out what an employer, or carrier, shall do when he institutes suit. Very clearly, paragraph (1) under sub-section (a) provides that an employee has a right to make a claim or maintain an action in court against the third party for his injury, *But the employer or carrier shall be entitled to reasonable notice and an opportunity to join in the action.* Paragraph (2) provides that the "commencement of an action" (which has to be the action mentioned in paragraph [1]) or the adjustment of the claim, shall not affect the right of the employee or his dependents to recover compensation, and the statute then provides how the proceeds of the monies

obtained through the action that has been commenced, or by settlement, shall be disbursed.

Sub-section (b) permits the employer or carrier to maintain the action in tort against a third party, but provides that reasonable notice and opportunity to be represented must be given to the compensation beneficiary. Apparently, the majority are holding that it is not necessary to give notice to the employer or carrier if the claim is settled before institution of a suit. I think this holding is absolutely contrary to the intention of the statute, and is completely unfair to the compensation carrier. If a carrier instituted suit against a third party and obtained a judgment, or settlement, without ever giving any notice to the employee that such a suit had been instituted, a court, upon complaint by the employee, would not hesitate to set aside any such judgment, and this court would affirm. I merely say "What is sauce for the goose, is sauce for the gander". Here, the employee settled his third party claim before he ever made any claim for workmen's compensation benefits to the carrier, and accordingly, the carrier neither knew of any claim for compensation against it nor of any settlement made by the employee with the third party. Accordingly, there was no way for appellant to protect itself.

I also definitely have the view that sub-section (c) requires approval of this settlement. Admittedly, approval was not obtained. Now, I do not mean that the commission has any jurisdiction over the third party. I agree that it has no authority to make the third party do anything—but it *does* have jurisdiction over the employee and certainly, in my view, has the power to disapprove a settlement which it deems improvident. In *Winfrey & Carlil v. Nickles, Admr.,* 223 Ark. 894, 270 S. W. 2d 923, this court held that sub-section (c) was designed for compromise settlements only, (rather than when a case is brought to trial and results in a verdict), stating:

"There is, however, good reason to require that a compromise settlement be so approved, for it is a basic theory of workmen's compensation legislation that neither the injured employee nor his dependents are to be

allowed to sacrifice their rights by improvident settlements.''

I submit that the commission also has a right to protect the employer or carrier from the effect of an improvident settlement between any employee and a third party. Let me give an example of what could happen. An employee, in the course of his employment, has a serious wreck with his brother, the fault being entirely with the brother, in which the employee is severely injured. Because of the relationship, he settles the tort claim with the brother by accepting a small amount of money, much less than his tort claim is worth, without giving any notice to the employer or carrier. He then files his claim for compensation and draws maximum benefits. The employer or carrier accordingly pays out a large sum of money, but, under the holding today, is precluded from recovering from the third party (brother) because of the settlement made.

The majority say:

''To hold subsection (c) applicable to third party tortfeasors would leave the adequacy or inadequacy of a compromise settlement approved by both the employer and the employee to the discretion of a court or the commission. There is nothing in the Workmen's Compensation Law to indicate that any such far reaching result was intended.''

In the first place, we are not here dealing with a settlement which has been approved by the employer (carrier) In fact, this is basically the complaint of appellant, i. e., that a settlement was made without its approval—or even knowledge.

The statement of the majority, just quoted, is particularly confusing to me since we have already followed the procedure of the commission approving settlements between an employee and a third party. In *Maxcy* v. *John F. Beasley Construction Co.*, 228 Ark. 253, 306 S. W. 2d 849, this court set out the facts as follows:

"The facts appear not to be in dispute. Appellant Maxcy, while in the course of his employment with John F. Beasley Construction Company, suffered injuries by a third party, the Ditmars, Dickmann, Pickens Construction Company (succeeded by Dickmann, Pickens, Bond Construction Company). Maxcy employed attorney, Whetstone, under a contract whereby he agreed to pay Whetstone 50 per cent of any recovery. Suit was filed in the federal court with the result that a settlement was effected, without trial, for $10,016.50. Because of his injuries, Maxcy was paid benefits by his employer's compensation carrier, the Liberty Mutual Insurance Company, in the total amount of $3,730.56. It appears that there was never any controversy between Maxcy and Liberty Mutual as to its liability to Maxcy for his injuries.

On March 5, 1956, appellant Maxcy filed a petition with the Workmen's Compensation Commission in which he asked for approval of a settlement and for an order of distribution of the $10,016.50. Later, in an amended petition, he asked that distribution be made in the following manner: To Liberty Mutual Insurance Company, $2,250 (5/9ths of its payment of $3,730.56); to Bernard Whetstone, $5,142.40 (attorney's fee plus $142.50 costs expended); and the balance to the employee, Robert Maxcy. In the alternative, he prayed for a distribution as follows: To Liberty Mutual Insurance Company, $1,865.28; to Bernard Whetstone, attorney, $5,142.40; to Robert Maxcy, employee, $3,008.82.

Following a hearing before a single commissioner, on the question of distribution and approval of the settlement with the third party, the commissioner approved the settlement of $10,016.50 and that attorney Whetstone was entitled to a fee of $5,000 to be deduced from the total recovery and that he should be reimbursed in the amount of $142.40 for certain expenses incurred by him in procuring the settlement. Of the remaining $4,851.60, $3,234.40 was ordered paid to Liberty Mutual Insurance Company and the remainder amounting to $1,617.20 paid to the employee, Maxcy. The full commission, on a hearing, approved the findings of the single commissioner and on appeal to the Circuit Court of Garland County,

that Court affirmed the findings of the commission on November 2, 1956. This appeal followed."

We mentioned that the settlement was effected without the suit being contested, was a voluntary compromise settlement, and the commission had acted under the authority of § 81-1340 (c).

The majority state, that under the view of the appellant in this case, a third party would have to pay twice for the same obligation. That certainly is not my view. If a settlement had been made, and the settlement taken before the commission before any money was paid—and the commission disapproved the settlement—there simply would have been no settlement. If, on the other hand, the settlement had already been effected, and the commission would not approve because of its inadequacy, the third party would be credited with what had already been paid when a settlement was made which met with the approval of the commission. Of course, from a practical standpoint, any settlement with a third party which had been approved by both employee and employer, would, in 99% of the cases, be approved also by the commission.

I respectfully dissent to the affirmance.

I am authorized to state that Fogleman, J. joins in this dissent.