The Honorable Jimmy Jeffress State Senator Post Office Box 904 Crossett, AR 71635-0904
Dear Senator Jeffress:
I am writing in response to your request for an opinion on the following:
 If a school district adopts and implements a school uniform policy pursuant to Arkansas Code § 6-18-102, can the board subsequently rescind the policy without referring the question to the qualified electors at the annual school election? For the purposes of the above question, it should be assumed that the uniform policy was originally adopted without referral to the electorate and was not so referred prior to rescission.
RESPONSE
In my opinion, the answer is "yes."
Arkansas Code Annotated § 6-18-102 outlines the procedures for implementing a school uniform policy in school districts. Specifically, it states in pertinent part:
 (b)(1) The board of directors of a local school district shall create an advisory committee composed of parents and students for the purpose of considering whether the district should adopt a uniform dress code for students.
 (2)(A) If the advisory committee recommends to the board that a uniform dress code for students be adopted, if no uniform dress code is adopted by the school board at least thirty (30) days prior to the filing deadline for the annual school election, and if not less than five percent (5%) of the qualified electors in the district [sic] the question of a uniform dress code voted upon, the board shall refer the issue of a dress code to the qualified electors of the district during the 2000 annual school election.
 (B) In addition to the 2000 annual election, the school board may refer the issue of a dress code to the qualified electors of the district at any subsequent school election.
 (3)(A) If a majority of the qualified electors of the district voting thereon at the election shall vote for the adoption of a school uniform policy, the board of directors shall prescribe appropriate school uniforms and implement the policy.
 (B) If a majority of the qualified electors of the district voting thereon at the election vote against the adoption of a school uniform policy, the board of directors may only refer the question again to the qualified electors of the district after a minimum period of one (1) year.
 (4)(A) After a school uniform policy has been implemented as a result of the 2000 annual school election required by this section for a minimum period of one (1) year, qualified electors of the district may by petition have the question of continuing the school uniform policy voted upon at the next school election.
 (B) The petition shall be signed by not less than five percent (5%) of the qualified electors in the district.
 (5)(A) Qualified electors of the district may at any time by petition have the question of implementing a uniform dress code voted upon at the next school election.
 (B) The petition shall be signed by not less than five percent (5%) of the qualified electors in the district.
 * * * (e) Nothing in this section shall be construed to limit the ability of a school district or a particular school within a district to adopt and implement a school uniform policy. Any school district may implement a school uniform policy without submitting the issue to the electors of the district.
Id. (emphasis added).
When interpreting statutes, the Arkansas Supreme Court has stated as follows:
 The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary meaning and usually accepted meaning in common language. Weiss v. McFadden, 353 Ark. 868, 120 S.W.3d 545
(2003). We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. Ozark Gas Pipeline Corp. v. Arkansas Pub. Serv. Comm'n, 342 Ark. 591, 29 S.W.3d 730 (2000). When the language of the statute is plain and unambiguous, there is no need to resort to rules of statutory construction. Weiss v. McFadden, supra. When the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. Id.
Macsteel, Parnell Consultants v. Ar. Ok. Gas Corp., 363 Ark. 22, ___ S.W.3d ___ (2005); see also Ops. Att'y Gen. 2005-072 2004-339.
The court has also held that "it does not engage in interpretations that defy common sense and produce absurd results," and that "in construing statutes . . . we look to the language under discussion in the context of the statute as a whole." Green v. Mills, 339 Ark. 200,205, 4 S.W.3d (1999) (citing Haase v. Starnes, 323 Ark. 262,915 S.W.2d 675 (1996)); Steward v. McDonald, 330 Ark. 837, 958 S.W.2d 297
(1997); and Burcham v. City of Van Buren, 330 Ark. 451, 954 S.W.2d 266
(1997).
The plain and ordinary language of A.C.A. § 6-18-102 does not limit the authority of the school board or individual schools to adopt or implement school uniform policies independent of a vote of the electorate. A.C.A. § 6-18-102(e). The statute does create an alternate method for the electorate to adopt a school uniform policy by vote if the school board does not adopt one. Id. at (b). Furthermore, the statute allows the electorate, by petition, to vote on whether to continue a uniform policy that was adopted "as a result of the 2000 annual school election" pursuant to A.C.A. § 6-18-102(b)(2)(A).Id. at (b)(4)(A). This provision is distinct from the specific retention of authority for the school board to adopt and implement school uniform policies without a vote of the people. Id. at (e).
When looking to the object meant to be accomplished by the statute, in my opinion, a school board that has adopted a uniform policy without a vote of the electorate may rescind that policy without a vote of the electorate. The General Assembly intended to encourage the adoption of school uniform policies. Specifically, the General Assembly stated:
 The General Assembly hereby finds and determines that the clothes and footwear worn by students in the public schools often preoccupy and distract students from their major purpose for being in school, that of becoming educated in math, science, English, history, and other subjects. The General Assembly further finds that student competition over clothes and footwear has, in several instances, led to violence and injuries during school hours; whereas, in those Arkansas schools that have adopted school uniforms, disparities in student socioeconomic levels are less obvious and disruptive incidents are less likely to occur.
A.C.A. § 6-18-102(a) (Repl. 1999). The language of subsection (b)(1) is mandatory and required every school district to create an advisory committee to study whether or not to recommend adoption of a uniform policy for the 2000 election. When examining the language of subsection (b)(2), the General Assembly contemplated the electorate using the petition process if a school district failed to implement a school uniform policy prior to the 2000 election. Id. As noted above, A.C.A. § 6-18-102 created an alternate route for adoption of a school uniform policy in A.C.A. § 6-18-102(b) should the school district have failed to implement a school uniform policy prior to the 2000 election. The statute further allows the electorate, by petition, to vote on whether to "continue" a school uniform policy that was adopted by a vote of the electorate as described above. Id. at (b)(4)(A).
While A.C.A. § 6-18-102(e) does not mention the authority of a school board to rescind a uniform policy, it does specifically state that a school district retains the authority to implement a uniform policy without a vote of the electorate. As noted above, the object to be accomplished by this statute appears to be to require each school district to consider adoption of a school uniform policy and to allow the electors to impose one if the school district does not. The statute explicitly grants the electorate the authority to vote on whether to continue an existing uniform policy. It is unlikely, in my opinion, that the legislature intended to grant the electorate authority to rescind a school uniform policy adopted by a vote of the electorate, while denying a school district the authority to rescind such a policy adopted by the school district. Although A.C.A. § 6-18-102 does not specifically mention a school district's power to rescind such a policy, a school board has the power to "do all things necessary and lawful for the conduct of efficient free public schools in the district[.]" A.C.A. § 6-13-620(a)(12) (Supp. 2005). In my opinion, this general authorization is broad enough to allow a school district to authorize or rescind a school uniform policy as implied by A.C.A. § 6-18-102(e),supra. I am bolstered in this conclusion by the logic of the settled rule of law that what a municipal government may do by majority vote, it may undo by majority vote absent constitutional or statutory prohibitions. See City of Ward v. Ward Water Sewer System,280 Ark. 177, 179, 655 S.W.2d 454 (1983); see also Op. Att'y Gen. 2004-011
(citing City of Ward, supra, and listing similar holdings).
In my opinion, therefore the authority of a school district to implement a school uniform policy, without a vote of the people, includes the concomitant authority to rescind that policy, also without a vote of the people.[1]
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] This conclusion addresses only the question presented in your request for an opinion — whether a school board that has adopted a uniform policy, without any action by the electorate, may rescind that same policy also without any action by the electorate.